SUHRHEINRICH, Circuit Judge.
Defendants James Popp and Gary Anderson appeal from the district court’s denial of qualified immunity in this § 1983 action brought by Robert Kinkus. The Village of Yorkville, Ohio also appeals the district court’s grant of summary judgment for Kinkus on his municipal liability claim. For the reasons that follow, we reverse, and dismiss Kinkus’s constitutional claims.
I. BACKGROUND
A. Facts
Yorkville is a village in the Ohio Valley with a population of about 1,200 people. At the time of the relevant events in this case, Plaintiff Robert Kinkus (“Kinkus”) was a member of the Yorkville Village Council and the assistant fire chief for the Yorkville Fire Department.
Kinkus was an outspoken critic of Defendant Gary Anderson (“Anderson”), Yorkville’s chief of police, and had publicly criticized Anderson at council meetings. In particular, Anderson criticized the Yorkville Police Department’s arrest and alleged assault of three young men, one of whom was Kinkus’s grandson. Anderson was aware of Kinkus’s comments.
The facts giving rise to the incident in question occurred on September 18, 2004, when weather conditions caused a flood in Yorkville. Many of Yorkville’s streets were closed to traffic due to rising flood-waters, including Fayette Street, on which Kinkus’s residence was located. On that day Defendant James Popp (“Popp”), a Yorkville police officer, and Yorkville fireman Jim Bailey (“Bailey”) agreed to temporarily remove some barricades blocking Fayette Street, so that a Yorkville resident could move her vehicle from her home. After they moved the barricades, Popp and Bailey observed a white jeep, contrary to the barricades, park in the middle of Fayette street directly in front of Kinkus’s residence. They decided to walk toward the jeep to determine why it was blocking the street, and encountered Kinkus as they came near the jeep.
Kinkus claims Popp first asked how long the jeep was going to be parked in the middle of the street. Kinkus replied that the jeep would remain parked there “[u]n-til the freaking water goes down.” Kinkus told Bailey that his daughter stopped at the firehouse to request help during the flood, and was told “nobody could help because they were busy.” He then said:
I’ve been here for seven or eight hours, the fire truck has been running up and down the street, doing nothing, the guys are standing in front of the city building, and I can’t get no help---- [T]he best *89 thing for you guys to do is to get the hell back up town, period.
At that point, Kinkus contends that the conversation ended and Popp and Bailey departed. Kinkus admitted that he was upset about cars driving across the street, but claims that he did not use any profanity during the course of the conversation.[1] The parties dispute whether Popp requested that Kinkus move the jeep from its parked location. There is no dispute, however, that Kinkus did not move the jeep from the street after his conversation with Popp.
No charges were brought against Kinkus on the day of the flood. Popp subsequently discussed the altercation with Yorkville’s chief of police, Defendant Anderson. Anderson asked Popp why he had not filed charges, and Popp explained that he was afraid of losing his job as a result of Kinkus’s threats. Anderson assured Popp that his job was secure and described the procedure for bringing charges. Popp completed a police report, to which a written statement from Bailey was included, and signed a criminal complaint form in blank. In filling out the complaint, Popp left blank the portion of the form specifying the particular charge. These materials were sent to Assistant Belmont County Prosecutor William Thomas (“Prosecutor Thomas”) for his review.
The prosecutor issued a criminal complaint against Kinkus, and filed it on October 21, 2004, in the Belmont County Court, charging Kinkus with disorderly conduct under Ohio Rev.Code § 2917.11(A)(2) for his actions on the day of the flood. This provision of Ohio’s disorderly conduct law provides that “[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another by ... [mjaking unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person.” Ohio Rev.Code § 2917.11(A)(2). Disorderly conduct is a “misdemeanor of the fourth degree” when “committed in the presence of any law enforcement officer.” Ohio Rev.Code § 2917.11(E)(2), (E)(3)(c).[2] Kinkus was presented with a criminal summons, and was not arrested or jailed as a result of the criminal complaint.[3]
The case proceeded to a bench trial in the Northern Division County Court of Belmont County, Ohio, and Kinkus was acquitted of the disorderly conduct charge. In its decision dismissing the case, the court found that on the day of the flood, Kinkus was acting in his private capacity— rather than official capaeity-as an assistant fire chief and Yorkville councilperson. The court further found that Kinkus “parked on the road, used vulgarity addressed to [Popp] who was simply trying to help the situation, questioned [Popp] if he had a ‘f_ing’ problem, advised [Popp] that this was “my god damn street,” and admitted that his actions were to protect his own home and not necessarily the com *90 munity itself or at large.” The court found, however, that because Kinkus’s words did not constitute “fighting words,” the court could “not find the evidence sufficient in this case beyond a reasonable doubt that [Kinkus] has committed a criminal act.”
B. Procedural History
On October 11, 2005, Kinkus filed suit under 42 U.S.C. § 1983 against Popp, Anderson, and Yorkville. Kinkus’s complaint raised claims of Fourth Amendment malicious prosecution against Popp, First Amendment retaliatory prosecution against Popp and Anderson, and a municipal liability claim against Yorkville.[4]
On January 10, 2006, Kinkus moved for partial summary judgment against Popp on his First Amendment retaliation claim and Fourth Amendment malicious prosecution claim. The district court granted the motion, finding that: (1) Popp filed a disorderly conduct charge against Kinkus without probable cause; (2) Prosecutor Thomas’s independent decision to prosecute Kinkus was not conclusive evidence of probable cause; and (3) Kinkus’s statements toward Popp on the day of the flood were protected by the First Amendment because they did not rise to the level of “fighting words.” Kinkus v. Village of Yorkville, 453 F.Supp.2d 1009 (S.D.Ohio 2006). The district court did not, however, resolve the issue of whether Popp and Anderson acted with retaliatory intent when they caused Kinkus to be prosecuted. The Defendants’ motion for reconsideration was denied. Kinkus v. Village of Yorkville, No. C2-05-930, 2007 WL 539535 (S.D.Ohio Feb. 15, 2007).
Kinkus moved for summary judgment against Popp and Anderson on his retaliation claim and against Yorkville on the municipal liability claim. Popp and Anderson moved for summary judgment, arguing that they were entitled to qualified immunity, and Yorkville moved for summary judgment on the municipal liability claim.
On March 13, 2007, the district court: (1) denied Popp’s and Anderson’s motions for qualified immunity on the retaliation claims; (2) granted summary judgment for Kinkus on the retaliation claim against Anderson; (3) denied Kinkus summary judgment on his retaliation claim against Popp; (4) denied Yorkville’s motion for summary judgment on the municipal liability claim; and (5) granted summary judgment for Kinkus on the municipal liability claim. Kinkus v. Village of Yorkville, 476 F.Supp.2d 829 (S.D.Ohio 2007).
II. ANALYSIS
On appeal, Popp and Anderson argue that the district court erred in denying them qualified immunity, and in granting Kinkus summary judgment on his municipal liability claim.
We review a district court’s denial of qualified immunity de novo. Gregory v. City of Louisville, 444 F.3d 725, 742 (6th Cir.2006). We analyze claims of qualified immunity using a three-part test, which requires us to determine: (1) whether a constitutional right was violated; (2) whether that right was clearly established and one of which a reasonable person would have known; and (3) whether the official’s action was objectively unreasonable under the circumstances. Williams v. Mehra, 186 F.3d 685, 691 (6th Cir.1999) *91 (en banc). Summary judgment is granted when “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56(c).
A. Fourth Amendment Malicious Prosecution Claim against Popp
Popp argues he should have been granted qualified immunity on the malicious prosecution claim because there was no Fourth Amendment violation. We agree, because Popp did not make the decision to charge Kinkus, and there is no proof in the record that Kinkus presented false information to the prosecutor.
This Court has held that a police officer cannot be liable for Fourth Amendment malicious prosecution when he did not make the decision to bring charges, as long as the information he submitted to the prosecutor is truthful. See Skousen v. Brighton High Sch., 305 F.3d 520, 529 (6th Cir.2002) (holding that a police officer “cannot be held liable for malicious prosecution when he did not make the decision to prosecute [the plaintiff]”); see also McKinley v. City of Mansfield, 404 F.3d 418, 444 (6th Cir.2005) (“Skousen, in which the plaintiff alleged that a police officer had falsely accused her, clearly forecloses a malicious prosecution claim based solely on officers’ turning over evidence to the prosecuting authorities.”).
Popp had no role in choosing to prosecute Kinkus. Prior to Prosecutor Thomas’s charging decision, Popp’s actions consisted only of completing a police report, signing a blank criminal complaint form that did not recommend any particular charge, and soliciting a written report from Bailey. These documents were ultimately forwarded to Prosecutor Thomas for his discretionary review of the evidence and charging discretion. No evidence suggests Popp ever consulted with or pressured Prosecutor Thomas to file charges.[5]
Moreover, Popp’s police report did not contain false information. The police report stated that Kinkus yelled and directed vulgarities at Popp and Bailey as they sought to inquire as to why the jeep was completely blocking Fayette Street. These facts were substantiated by the factual findings of the trial judge at Kinkus’s criminal trial, which are subject to collateral estoppel. See Fridley v. Horrighs, 291 F.3d 867, 875 (6th Cir.2002) (providing that collateral estoppel applies when “the law of collateral estoppel in the state in which the issue was litigated would preclude relitigation of such issue, and [] the issue was fully and fairly litigated in state court”). The facts surrounding the incident were fully and fairly litigated in the state criminal proceeding, and among the witnesses who testified were Popp, Bailey, and Kinkus. Furthermore, the facts concerning Kinkus’s speech on the day of the flood *92 were necessary to the state court’s determination of whether Kinkus committed disorderly conduct. See Bentley v. Grange Mut. Cas. Ins. Co., 119 Ohio App.3d 93, 694 N.E.2d 526, 530 (1997) (providing that under Ohio law, collateral estoppel applies to facts that: “(1) [were] actually and directly litigated in the prior action, (2) [were] passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action”).
Thus, Kinkus cannot contest the accuracy of Popp’s police report which served as the basis for Prosecutor Thomas’s decision to bring the disorderly conduct charge. Since Popp supplied only truthful information to Prosecutor Thomas, he cannot be subject to a malicious prosecution claim. See McKinley, 404 F.3d at 444 (holding that the defendant could not be liable for malicious prosecution where the plaintiff “presented] no evidence suggesting that defendants conspired with, influenced, or even participated in, [the prosecutor’s decision to bring charges against him”); Darrah v. City of Oak Park, 255 F.3d 301, 312 (6th Cir.2001) (dismissing the plaintiff’s contention that the defendant police officer caused the state court to find probable cause because “based on the facts alleged by [the plaintiff] and the information in the police report, there is no indication that [the defendant’s report misled the court in any way”)
Accordingly, the district court erred in denying Popp qualified immunity on the malicious prosecution claim and granting summary judgment for Kinkus on that claim.
B. First Amendment Retaliatory Prosecution Claim against Popp and Anderson
Popp and Anderson argue they should have been granted qualified immunity on the First Amendment retaliatory prosecution claims because there was not a constitutional violation. We agree.
An essential element of a First Amendment retaliatory prosecution claim is retaliatory animus. See Hartman v. Moore, 547 U.S. 250, 260, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006) (providing that “the plaintiff in a retaliatory-prosecution claim must prove the elements of retaliatory animus as the cause of injury”); Bloch v. Ribar, 156 F.3d 673, 678 (6th Cir.1998) (providing that a plaintiff must prove in a First Amendment retaliation claim that “the adverse action was motivated at least in part as a response to the exercise of the plaintiffs constitutional rights”).[6] Here, Kinkus clearly cannot succeed in proving the animus element as to either Popp or Anderson. As previously explained, there can be no animus under McKinley. See McKinley, 404 F.3d at 444.
With respect to Popp, there can be no animus because the allegations in his police report were true, and we are collaterally estopped from reaching any different conclusion. Contrary to the district court’s conclusion, the one-month lapse between the incident and the disorderly conduct charge does not suggest animus. There is not a shred of evidence in the record to support the district coui't’s speculation that Anderson “could have relayed to [] Popp the various disparaging com *93 ments that [Kinkus] made regarding the Yorkville police.” Kinkus, 476 F.Supp.2d at 838. Such speculation does not allow Kinkus to avoid summary judgment.
As for Anderson, there is no animus because there is no evidence in the record that he ordered or ever suggested that Popp lie in the police report. Thus, contrary to the district court’s conclusion, it is immaterial that Anderson testified that the charges were brought against Kinkus “only in part” because of statements he made previously regarding the Yorkville Police Department. There is no evidence in the record that he instructed Popp to lie. And, again, a state court trial judge found that the information Popp provided to the prosecutor was true.
Accordingly, the district court erred in denying Popp and Anderson qualified immunity on the retaliatory prosecution claim and granting summary judgment for Kinkus on his claim against Anderson, because no First Amendment violation lies under Kinkus’s version of the facts. See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (“If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.”).
C. Municipal Liability Claim against Yorkville
Defendants request that we exercise “pendent appellate jurisdiction” to dismiss the municipal liability issues. We do, because absent any constitutional violation, there can be no municipal liability. See Brennan v. Twp. of Northville, 78 F.3d 1152, 1158 (6th Cir.1996).[7] Furthermore, even if there had been a constitutional violation, there was no custom or policy, because, in the first place, Prosecutor Thomas — not Anderson — made the decision to prosecute Kinkus. Yorkville cannot be held liable under a theory of vicarious liability. See Monell v. Dep’t of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that a municipality cannot be liable on a respondeat superior theory).
Accordingly, the district court erred in denying Yorkville summary judgment on the municipal liability claim and granting summary judgment for Kinkus on that claim.
III. CONCLUSION
For the reasons stated above, we REVERSE the district court’s denial of quali *94 fied immunity to Popp on the malicious prosecution claim, REVERSE the district court’s denial of qualified immunity to Popp and Anderson on the retaliation claims, REVERSE the district court’s grant of summary judgment for Kinkus on his malicious prosecution claim against Popp and his retaliatory prosecution claim against Anderson, REVERSE the district court’s grant of summary judgment for Kinkus on Kinkus’s municipal liability claim against Yorkville, and DISMISS Kinkus’s claims for malicious prosecution, retaliation, and municipal liability.

. Kinkus’s contention that he did not use profanity is contradicted by the factual findings of the trial court judge at Kinkus’s state court trial for disorderly conduct. The judge found that Kinkus did use profanity during the course of the verbal exchange.

. A fourth-degree misdemeanor carries a potential jail term of up to thirty days and a fine of up to $250.00. Ohio Rev.Code §§ 2929.24(A)(4); 2929.28(A)(2)(a)(iv).

. Because the disorderly conduct charge was a misdemeanor, a grand jury was not required to pass judgment on whether there was probable cause to charge. See City of Cleveland Heights v. Perryman, 8 Ohio App.3d 443, 457 N.E.2d 926, 930 (1983) ("[A] misdemeanor complaint can be issued by a prosecutor or a law enforcement officer without grand jury involvement.”).

. Kinkus also alleged that the acts of the Defendants "constituted an unlawful civil conspiracy to violate [his] rights.” The district court docket indicates that on March 16, 2007, Kinkus moved for the dismissal of his civil conspiracy claim without prejudice. The parties have not addressed this claim on appeal.

. The facts of Skousen are substantially similar. In Skousen, the plaintiff was charged and acquitted of domestic assault, and later filed a § 1983 claim alleging Fourth Amendment malicious prosecution against the investigating officer. The actions of the police officer defendant consisted of completing a police report detailing his investigation of an alleged assault involving the plaintiff, and then submitting the police report and a medical report to the prosecutor's office. Skousen, 305 F.3d at 525. We found that the plaintiff’s malicious prosecution claim failed because she "offered no evidence ... supporting her claim that [the defendant] caused her to be prosecuted,” and there was "no evidence that [the defendant] made or even was consulted with regard to the decision to prosecute [the plaintiff]." Id. at 529.

. To prove a First Amendment retaliation claim, a plaintiff must also demonstrate that he was engaged in a constitutionally protected activity and that an adverse action caused him to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity. Bloch, 156 F.3d at 678. In a First Amendment retaliatory prosecution claim, a plaintiff must prove "want of probable cause.” Hartman, 547 U.S. at 265, 126 S.Ct. 1695; see also Barnes v. Wright, 449 F.3d 709, 719 (6th Cir.2006).

. The dissent asserts that we cannot entertain the municipal liability claim. However, York-ville gave notice that it is a party to the appeal, given that Yorkville is listed as a party in the caption of the notice of appeal. See Fed. R.App. P. 3(c)(1)(A) (providing that a party’s notice of its intent to take the appeal is sufficient if the party is named "in the caption or body of the notice”). Second, the notice of appeal "designate[d] the judgment ... being appealed” under Fed. R.App. P. 3(c)(1)(B) by referencing the district court's March 13, 2007 final judgment. In that decision, the district court, inter alia, granted summary judgment for Kinkus on the municipal liability claim.
Further, in ruling on the municipal liability claim we avoid the needless waste of judicial resources by holding that there can be no municipal liability absent an actual constitutional violation at the hands of either Popp or Anderson. See City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) ("If a person has suffered no constitutional injury at the hands of [an] individual police officer, the fact that [municipal policy or custom] might have authorized [a constitutional violation] is quite beside the point.”); Floyd v. City of Detroit, 518 F.3d 398, 411 (6th Cir.2008) ("Where a court determines that no violation of the plaintiff's constitutional rights occurred, obviously the governmental entity cannot be liable ... for developing a [policy or] custom that led to a constitutional violation.”).