*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0246p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

LaTasha Adams,

*Plaintiff-Appellant,*

> No. 09-2045

*v.*

Karen Hanson,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 08-15028—John Corbett O'Meara, District Judge.

Argued: June 7, 2011

Decided and Filed: August 30, 2011

Before: DAUGHTREY, MOORE, and STRANCH, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Barry A. Wolf, Flint, Michigan, for Appellant. Mary Massaron Ross, PLUNKETT COONEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Barry A. Wolf, Flint, Michigan, for Appellant. Mary Massaron Ross, PLUNKETT COONEY, Detroit, Michigan, for Appellee. James J. Walsh, BODMAN LLP, Ann Arbor, Michigan, for Amicus Curiae.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge. After her arrest and incarceration as a witness in a criminal proceeding, LaTasha Adams ("Adams") brought suit in the United States District Court for the Eastern District of Michigan pursuant to 42 U.S.C. § 1983 against Karen Hanson ("Hanson"), an assistant prosecutor in Genesee County, Michigan, in her individual capacity. Hanson subpoenaed Adams to testify in state court

1

during the preliminary examination of a criminal defendant.  When Adams arrived at the state courthouse, she and Hanson spoke about her possible testimony, and after their discussions, Hanson informed the trial court that Adams was unwilling to testify.  The court ordered Adams detained based on Hanson's representations without providing Adams an opportunity to be heard or to post bond.

In her federal § 1983 suit, Adams claims that she was unlawfully detained for twelve days as a result of Hanson's false and misleading representations to the state trial court regarding Adams's availability as a witness.  The district court granted Hanson's motion for summary judgment on the grounds that Hanson is entitled to absolute immunity for conduct falling within her role as a prosecutor.  Adams appeals, arguing that Hanson acted as a complaining witness or, in the alternative, fulfilled an administrative function.  The American Civil Liberties Union Fund of Michigan filed an amicus brief arguing that absolute immunity should not protect prosecutors from suits filed by third-party witnesses.

When making statements at a preliminary examination about the availability of a witness, Hanson functioned as an advocate for the State of Michigan and performed acts intimately associated with the judicial process.  Because she is absolutely immune from suit for her prosecutorial conduct, we **AFFIRM** the district court's grant of summary judgment to Hanson.

## I.  BACKGROUND

Hanson, an assistant prosecutor, subpoenaed Adams to testify in a preliminary examination in a gang-related racketeering case in state court.  One of the defendants charged in the case was Marquan Cager ("Cager"), the father of one of Adams's children.  In 2006, Adams had filed a domestic violence complaint against Cager and provided a statement to investigating officers describing Cager's involvement in gang-related murders and drug-trafficking activities.  When Cager was charged with crimes described in Adams's statement, Hanson authorized a subpoena compelling Adams to

appear in court at a preliminary examination in order to testify about her knowledge of the criminal enterprise.

Law-enforcement officers served the subpoena on Adams at her home the morning she was set to appear at the preliminary examination. Adams, who was six-and-a-half-months pregnant, arrived at the courthouse that afternoon and met with law-enforcement personnel. She was then taken to meet Hanson, who provided her with a copy of a report that documented her statements about Cager's criminal activity.

Hanson advised Adams to review the report. She also told Adams that she would return in about an hour and a half to bring Adams into the courtroom to testify in conformity with her prior statements. Adams responded that she did not want to testify and that she was under a doctor's care due to a high-risk pregnancy. When Hanson returned, Adams repeated her refusal to testify. Adams informed Hanson that she was not going to testify in conformity with the report because she had not made the statements attributed to her and the statements were not true.[1]

According to Adams, Hanson returned to the courtroom and advised the judge, off the record, that Adams would not testify in accordance with the report, and that she should be held in contempt. Based on the information provided by Hanson, the trial judge signed a mittimus directing that Adams be held in jail until further order of the court. After the judge signed the mittimus, two sheriff's deputies confronted Adams and asked her if she was going to testify. When she informed them that she was not going to testify, she was handcuffed and taken to the Genesee County jail.

Adams was incarcerated for twelve days, during which she was allegedly held in isolation for twenty-three hours a day. Before she was detained, Adams was never brought before the court and questioned about her willingness to testify or her ability to return to court to testify at a later date. She alleges that she was never given an

---

[1] Adams described their ensuing exchange as "heated." Denying that her behavior toward Adams was confrontational, Hanson asserts that she gave Adams the option of testifying that her previous statements were not true, but Adams flatly refused to appear in court and testify under any circumstances. For purposes of summary judgment, however, Hanson stipulates to Adams's version of the facts.

opportunity to obtain counsel or post bond, and that she was never advised of the basis of her detention, of any right to be represented by counsel, or of any right to a hearing.

In the days following her arrest, Adams submitted a kite notifying the jail authorities that she was willing to testify. In the meantime, however, the preliminary examination had been continued. A week later, when proceedings resumed, Adams was brought into the courtroom to testify, at which point several attorneys for the defendants demanded an explanation for why she had been incarcerated. Hanson first explained that Adams was held for contempt of court, but after reviewing the mittimus ordering Adams's arrest, she stated that Adams had been held, not for contempt, but as a material witness, as indicated on the order. Adams was released from custody after she completed her substantive testimony.

Adams claims that Hanson sought to secure her detention in order to coerce her into testifying, and that she was detained for contempt of court at Hanson's suggestion. In Hanson's account, the trial judge ordered Adams held as a material witness and directed Hanson and an officer from the sheriff's department to write out a mittimus to that effect. Adams also asserts that Hanson made several false and misleading statements in order to persuade the court to hold Adams. Hanson told the court that she had been trying for three weeks to serve Adams with a subpoena, when efforts to serve Adams had been underway for only two weeks. Furthermore, Hanson failed to disclose to the court that Adams had been served with a subpoena only that morning and had appeared at the courthouse voluntarily the same day, which would have demonstrated to the court Adams's willingness to comply with the court's orders.

Adams subsequently brought suit against Hanson in federal district court pursuant to 42 U.S.C. § 1983 for violations of her constitutional rights under the Fourth, Fifth, and Fourteenth Amendments. Hanson filed a motion for summary judgment on the basis of absolute prosecutorial immunity which the district court granted on May 28, 2009. On July 22, 2009, the district court denied Adams's motion for relief from the order of dismissal, construing it as a motion for reconsideration. Adams timely appealed

from the district court's opinion and order denying relief from the order of dismissal, and from the order granting Hanson's motion for summary judgment.

## II.  ANALYSIS

### A.  Standard of Review

We review de novo a district court's grant of summary judgment, construing the evidence and drawing all reasonable inferences in favor of the nonmoving party. *Ireland v. Tunis*, 113 F.3d 1435, 1440 (6th Cir. 1997).  Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c)(2) (2009).  Hanson moved for summary judgment, so we accept the facts as alleged by Adams and draw all reasonable inferences in her favor.

### B.  Absolute Immunity

#### 1.  Functional Test

The district court granted summary judgment on the grounds that Hanson is entitled to absolute immunity.  "Whether a defendant is entitled to absolute or qualified immunity from liability under 42 U.S.C. § 1983 is a legal question that [we] review[] de novo."  *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (emphasis omitted).  A government officer is entitled to absolute immunity for performing functions "intimately associated with the judicial phase of the criminal process."  *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).  Hanson, as "the official seeking absolute immunity[,] bears the burden of showing that such immunity is justified for the function in question."  *Burns v. Reed*, 500 U.S. 478, 486 (1991).

In *Imbler*, the Supreme Court extended absolute immunity to prosecutors sued for damages under 42 U.S.C. § 1983, holding that a prosecutor is entitled to absolute immunity when he acts "within the scope of his duties in initiating and pursuing a criminal prosecution."  424 U.S. at 410.  Absolute immunity for prosecutorial duties is justified by the same considerations that supported prosecutorial immunity under the

common law. These include "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust," *id.* at 423, thereby "prevent[ing] the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system," *id.* at 427-28. Although absolute immunity "leave[s] the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty," "the broader public interest" would be disserved if defendants could retaliate against prosecutors who were doing their duties. *Id.* at 427.

Our cases since *Imbler* have employed a "functional approach" to determine whether a prosecutor's acts entitle her to absolute immunity. *Burns*, 500 U.S. at 486. Under the functional approach, we "look[] to 'the nature of the function performed, not the identity of the actor who performed it'" when assessing whether conduct is prosecutorial, and thus absolutely protected. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)). Absolutely protected acts of advocacy include those "undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Id.* at 273. A prosecutor is thus absolutely protected when she appears in court in support of an application for a search warrant and presents evidence at a probable cause hearing, *Burns*, 500 U.S. at 491-92, and when she prepares and files unsworn documents in order to obtain an arrest warrant, *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997). Absolute immunity also protects a prosecutor when she evaluates evidence and presents that evidence at trial or before a grand jury, *Buckley*, 509 U.S. at 273; *Higgason v. Stephens*, 288 F.3d 868, 878 (6th Cir. 2002), prepares witnesses for trial, *Imbler*, 424 U.S. at 430 n.32; *Buckley*, 509 U.S. at 273, and even elicits false testimony from witnesses, *Burns*, 500 U.S. at 489-90; *Buckley*, 509 U.S. at 270-71. By shielding prosecutors engaging in these activities, absolute immunity "serves the policy of protecting the judicial process." *Burns*, 500 U.S. at 492.

Nonetheless, because "[a]bsolute immunity is designed to free the *judicial process*," not merely the prosecutor, "from the harassment and intimidation associated with litigation," absolute immunity protects "only . . . actions that are connected with the prosecutor's role in judicial proceedings, not . . . every litigation-inducing conduct." *Id.* at 494. Only qualified immunity is available to prosecutors when they perform "investigative" or "administrative" functions unrelated to judicial proceedings. *Id.* at 483 n.2 (internal quotation marks omitted); *see Buckley*, 509 U.S. at 273; *Holloway v. Brush*, 220 F.3d 767, 774-75 (6th Cir. 2000) (en banc). Investigative acts outside the scope of absolute immunity include giving legal advice to the police during a pretrial investigation, *Burns*, 500 U.S. at 494-96, conspiring to fabricate evidence during the time before convening a grand jury, *Buckley*, 509 U.S. at 274-76, and making false statements at a press conference, *id.* at 276-78. In addition, a prosecutor is entitled to only qualified immunity when she acts as a complaining witness by making sworn statements to the court in support of a criminal complaint. *Kalina*, 522 U.S. at 129-31.

In sum, "acts undertaken in direct preparation of judicial proceedings . . . warrant absolute immunity, whereas other acts, such as the preliminary gathering of evidence that may ripen into a prosecution, are too attenuated to the judicial process to afford absolute protection." *Ireland*, 113 F.3d at 1445; *see Harris v. Bornhorst*, 513 F.3d 503, 509-11 (6th Cir. 2008) (affirming denial of absolute immunity to a prosecutor who instructed police to arrest suspect); *Prince v. Hicks*, 198 F.3d 607, 612-15 (6th Cir. 1999) (affirming denial of absolute immunity to a prosecutor who undertook a preliminary investigation and advised police that probable cause existed to arrest a suspect). In categorizing a prosecutor's acts, "the critical inquiry" for immunity purposes is thus "how closely related . . . the prosecutor's challenged activity [is] to his role as an advocate intimately associated with the judicial phase of the criminal process." *Holloway,* 220 F.3d at 775 (internal quotation marks omitted) (emphasis omitted). "The analytical key to prosecutorial immunity, therefore, is *advocacy*—whether the actions in question are those of an advocate." *Id.* (emphasis in original).

### 2. Prosecutorial Function

Because "[a]lmost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute," *Burns*, 500 U.S. at 495, we must identify precisely the wrongful acts allegedly performed by Hanson, and classify those acts according to their function. Adams claims that Hanson made false and misleading factual representations to the state trial court, ex parte and off the record during a hearing recess, regarding the availability of Adams as a witness, and that these statements led to her unlawful arrest and detention. The district court determined that Hanson was entitled to absolute immunity from suit because she was acting as an advocate for the state in connection with a preliminary examination. Adams disagrees: she claims that Hanson acted as a complaining witness, or, in the alternative, fulfilled an administrative function.

The case thus presents an issue of first impression in this circuit: whether a prosecutor is entitled to absolute immunity for her false and misleading statements to a trial court in the course of criminal proceedings about the availability of a witness. The Michigan ACLU as Amicus argues that, as a rule, absolute immunity should not apply to actions of a prosecutor with respect to a third-party witness. Under this view, actions of a prosecutor vis-à-vis a criminal defendant should be distinguished from actions vis-à-vis a third-party witness, and absolute immunity should not be extended to the latter because the historical and policy rationales for absolute immunity do not apply with equal force in the witness context.

Other circuits that have addressed the question have held that prosecutors are ordinarily entitled to absolute immunity for conduct falling within a prosecutorial function when they seek detention of a material witness pursuant to judicial order. *See Betts v. Richard*, 726 F.2d 79, 81 (2d Cir. 1984); *Daniels v. Kieser*, 586 F.2d 64, 68-69 (7th Cir. 1978), *cert. denied,* 441 U.S. 931 (1979); *cf. Odd v. Malone*, 538 F.3d 202, 212 (3d Cir. 2008) (plaintiff "acknowledge[d] that [prosecutor] was acting in her prosecutorial capacity when she secured the material witness warrant"). The Third Circuit has cautioned, however, that "policy considerations underlying prosecutorial

immunity counsel against recognizing absolute immunity" in material-witness cases. *Odd*, 538 F.3d at 216; *see also al-Kidd v. Ashcroft*, 580 F.3d 949, 963 (9th Cir. 2009), *rev'd on other grounds*,131 S. Ct. 2074 (2011) (holding that absolute immunity does not attach to prosecutor's solely investigative use of a material-witness warrant).[2] We have stated in dicta that absolute immunity protects a prosecutor seeking the incarceration of a material witness, *White by Swafford v. Gerbitz*, 860 F.2d 661, 665 n.4 (6th Cir. 1988), *cert. denied*, 489 U.S. 1028 (1989), but not a prosecutor who fails to act timely to secure a material-witness's release after being ordered to do so by the court, *id.* The scope of a prosecutor's immunity in this context, however, has never been squarely addressed by this court.

We conclude that Hanson's statements before the trial court at the preliminary examination regarding Adams's availability as a witness fell within her role as an advocate for the State of Michigan and are therefore absolutely protected. The prosecutorial function includes initiating criminal proceedings, appearing before the court at a probable cause hearing or before a grand jury, seeking an arrest warrant, and preparing witnesses. *Imbler*, 424 U.S. at 431 & n.33; *Burns*, 500 U.S. at 489-92; *Buckley*, 509 U.S. at 270-71, 73; *Kalina*, 522 U.S. at 129. Hanson's challenged conduct involved the analogous acts of appearing at a preliminary examination and making statements about her discussions with a potential witness—activities "closely related . . . to h[er] *role as an advocate*" before the court in criminal proceedings. *Holloway,* 220 F.3d at 775 (emphasis in original) (internal quotation marks omitted). Furthermore, because the issuance of either a material-witness warrant or an order of contempt "is unquestionably a judicial act," a prosecutor's statements to the court regarding the availability of a witness are "'intimately associated with the judicial phase of the criminal process' . . . . [and are] connected with the initiation and conduct of a prosecution, particularly where," as here, "the hearing occurs after arrest [of the

---

[2]The Supreme Court recently declined to address whether the United States Attorney General's conduct in relation to material witnesses was protected by absolute immunity. *See infra* n.4.

defendant]" in the criminal proceedings.**3** *Burns*, 500 U.S. at 492 (internal citation omitted).

It is especially instructive that, under Michigan law, it is the prosecutor's particular, non-delegable duty to "make a diligent good-faith effort to find and produce" witnesses in criminal prosecutions. *People v. Dye*, 427 N.W.2d 501, 510 (Mich. 1988). Although the parties dispute whether Hanson sought to hold Adams as a material witness or in contempt of court, there is no dispute that Hanson sought to secure Adams's testimony as a witness in a criminal prosecution, a province of the prosecutor. That Hanson allegedly acted outside of formal judicial proceedings, in an off-the-record discussion with the trial judge, does not strip her automatically of immunity for this conduct. "[T]he duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Imbler*, 424 U.S. at 431 n.33. Specifically, conduct related to the preparation and presentation of witness testimony may be protected whether it occurs in or out of court. *See id.* at 430 n.32 (holding that prosecutor was entitled to absolute immunity for making statements to police regarding the questioning of a witness during a courtroom recess); *cf. Buckley*, 509 U.S. at 277-78 (denying prosecutor absolute immunity for making out-of-court statements at a press conference). In fulfilling her prosecutorial duties, Hanson's conduct constituted an "effort to control the presentation of [a] witness' testimony" which is "fairly within [her] function as an advocate." *Imbler*, 424 U.S. at 430 n.32.

---

**3**Material-witness arrests in Michigan are governed by the Michigan material-witness statute, which outlines the process to be undertaken by a court ordering a material witness's detention. The Michigan material-witness statute states:

> When it appears to a court of record that a person is a material witness in a criminal case pending in a court in the county and that there is a danger of the loss of testimony of the witness unless the witness furnishes bail or is committed if he or she fails to furnish bail, the court shall require the witness to be brought before the court. After giving the witness an opportunity to be heard, if it appears that the witness is a material witness and that there is a danger of the loss of his or her testimony unless the witness furnishes bail or is committed, the court may require the witness to enter into a recognizance with a surety in an amount to be determined by the court for the appearance of the witness at an examination or trial. If the witness fails to recognize, he or she shall be committed to jail by the court, until he or she does recognize or is discharged by order of the court.

MICH. COMP. LAWS ANN. § 767.35.

Because Hanson's actions fell within her prosecutorial role, she is entitled to absolute immunity even if her statements were false or misleading. As this court has recently emphasized, "prosecutors do not forfeit their absolute immunity when they knowingly make false statements while advocating before the court," *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 725 (6th Cir. 2011), "'so long as the statements were related to the proceeding[s]'" in which they were made, *id.* (quoting *Burns*, 500 U.S. at 490). Therefore, even if Hanson made false representations to the trial judge regarding Adams's availability, she is protected by absolute immunity because she was "serving as an advocate in judicial proceedings," *Kalina*, 522 U.S. at 125, when she made statements "related to th[ose] proceedings," *Burns*, 500 U.S. at 490.

Hanson's allegedly improper motive in seeking and securing Adams's detention does not alter our conclusion that Hanson's acts served a prosecutorial function. Suggesting an investigative purpose, Adams claims that Hanson sought her detention in order to coerce her into testifying in accordance with the 2006 statement. "As the line of absolute-immunity cases make clear, however, a prosecutor's allegedly improper motive alone is not enough to defeat absolute immunity, so long as the general nature of his actions falls within the scope of his duties as an advocate for the state." *Cady v. Arenac Cnty.*, 574 F.3d 334, 341 (6th Cir. 2009). "[T]he general nature of [Hanson's] actions" in making unsworn representations to the court regarding Adams's availability to testify "f[ell] within the scope of h[er] duties as an advocate for the state," and are therefore absolutely protected whatever Hanson's motive was in making them. *Id.*[4]

---

[4] Reviewing whether a material-witness arrest was reasonable, the Supreme Court recently held that the Fourth Amendment is not violated by a material-witness arrest made pursuant to an otherwise valid warrant simply because the arrest was made for an investigative purpose. *Ashcroft v. al-Kidd*, 563 U.S. ----, 131 S. Ct. 2074, 2085 (2011). Without examining what renders a material-witness warrant constitutionally valid, the Court assumed that the warrant for al-Kidd was lawful absent the allegedly improper pretext. *Id.* at 2083. Because the warrant was supported by individualized suspicion that the witness was material and soon to be unavailable, the government's motive in obtaining the warrant was deemed irrelevant to the Fourth Amendment analysis. *Id.* at 2082-83. Disposing of al-Kidd's claims on qualified immunity grounds, the Court held that Ashcroft did not violate clearly established law when he authorized the pretextual use of material-witness warrants, *id.* at 2083-85, and declined to "address the more difficult question whether [Ashcroft] enjoys absolute immunity," *id.* at 2085.

Absolute immunity would be defeated if Hanson's acts and omissions were instead administrative—i.e., if representing that Adams refused to testify without also securing her appearance in court served an administrative rather than prosecutorial function. We held in *Holloway v. Brush* that a social worker's "out-of-court actions, misinforming [a party] and failing to inform the court of the [party's] appearance," which led to the severing of the party's parental rights, were administrative acts rather than the conduct of an advocate. 220 F.3d at 776 (emphasis omitted). Adams, in contrast, admitted that she told Hanson and the sheriffs that she would not appear in the courtroom and testify, and Hanson presented this information to the trial court. Unlike the social worker in *Holloway*, Hanson did not "appropriate[] the entire judicial process to herself by hiding [Adams] and the court from each other," but rather, the trial court itself proceeded without providing Adams an opportunity to be heard. *Id.* at 777.

Significantly, the Michigan statute assigns responsibility for material-witness protections to the court. The statute provides that, "[w]hen it appears to *a court*" that the appropriate conditions are met, then "*the court* shall require the witness to be brought before [it]." MICH. COMP. LAWS ANN. § 767.35 (emphasis added). The responsibility is thereby placed with the court to provide a witness the opportunity to be heard and to assess itself the materiality of her testimony and the likelihood that she would fail to appear. *Id.* Because this judicial process was not followed in this case, Adams was not provided the opportunity to be heard or to furnish bail before the trial court ordered her detained. Although we remain seriously troubled by the abrogation of Adams's procedural rights, Adams's "experience illustrates the importance of vigilant exercise of this checking role by the judicial officer to whom the warrant application is presented," not that prosecutors must be held accountable for judicial error. *Al-Kidd*, 131 S. Ct. at 2088 n.2 (Ginsburg, J., concurring).

Along the same lines, this case is readily distinguishable from *Odd v. Malone*, in which the Third Circuit characterized as administrative the defendant-prosecutors' actions vis-à-vis detained material witnesses and denied absolute immunity. 538 F.3d at 217. One prosecutor had failed to inform the judge that the case for which the witness

was detained had been continued, per the judge's order and per local custom. *Id.* at 212-13. Another failed to seek the release of a third-party witness in state custody after the termination of the proceedings in which he was to testify. *Id.* at 215. The Third Circuit held that these actions were not acts of advocacy related to conducting a prosecution for the state but rather were administrative tasks which the prosecutors failed to complete. *Id.* at 217. Hanson's actions, in contrast, occurred while seeking a witness's detention, not after the detention had commenced, and Adams has not alleged that Hanson defied the court's instructions. In this case, moreover, the court was complicit in the alleged denial of Adams's procedural rights. Unlike the incarcerations in *Odd*, which were prolonged past the intention of the court due to prosecutorial oversight, it was left to the state trial court in this case "to determine whom to incarcerate and for what length of time."[5] *Id.* at 214.

Our opinion does not foreclose the possibility that Adams's constitutional rights were violated[6] or that a prosecutor's actions in relation to a witness may be

---

[5] In its most recent pronouncement on absolute prosecutorial immunity, the Supreme Court held that a prosecutor is entitled to absolute immunity even when performing an "administrative activit[y]" if the act is done in the performance of an advocacy function. *Van de Kamp v. Goldstein*, 555 U.S. 335, 129 S. Ct. 855, 861 (2009). Certain kinds of administrative obligations are "directly connected with the prosecutor's basic trial advocacy duties," *id.* at 863, and "require legal knowledge and the exercise of related discretion," *id.* at 862. Thus, a supervisory prosecutor is entitled to absolute immunity when she has engaged in these types of "administrative" tasks because prosecutors are "immune in a suit directly attacking their actions related to an individual trial" which are "'intimately associated with the judicial phase of the criminal process.'" *Id.*

In *Schneyder v. Smith*, --- F.3d ---, No. 10-2367, 2011 WL 3211504, at *13-16 (3d Cir. July 29, 2011), the Third Circuit reconsidered its holding in *Odd* in light of *Van de Kamp*, and reaffirmed the denial of absolute immunity to the prosecutor. The Third Circuit emphasized that the prosecutor's failure to advise the state trial judge of the status of the detained witness was "neither discretionary nor advocative, but . . . instead . . . purely administrative," and thus not protected by absolute immunity. *Id.* at *16.

Like the administrative acts in *Van de Kamp*, Hanson's conduct before the state trial court, to the extent it can be characterized as administrative, was "directly connected with [her] basic trial advocacy duties," 129 S. Ct. at 863, and "require[d] legal knowledge and the exercise of related discretion," *id.* at 862. Hanson's discretionary and advocative statements when appearing before the state trial court were "integral to [the] advocacy function" of procuring a witness's testimony. *Warney v. Monroe Cnty.*, 587 F.3d 113, 124 (2d Cir. 2009).

[6] It stands to reason that "the rights of a material witness, charged with no wrongdoing, to be brought before a magistrate certainly are at least equivalent to those of a person charged with a crime." *Stone v. Holzberger*, No. 92-3675, 1994 WL 175420, at *3 (6th Cir. Jan. 6, 1994) (unpublished opinion). Although the Supreme Court has never comprehensively addressed the statutory and constitutional requirements for a valid material-witness warrant, some federal courts have applied wholesale the Fourth Amendment's warrant requirement to a material-witness arrest because "the essential element" in analyzing a seizure of the person "is the physical restraint placed upon the person, not the purpose behind the restraint." *Bacon v. United States*, 449 F.2d 933, 942 (9th Cir. 1971).

If the warrant requirement is adapted to the material-witness context, an application for a material-witness warrant under the federal material-witness statute "must establish *probable cause* to believe that

administrative or investigative in another context.[7]  If Hanson had detained Adams without a court order, she likely would have been engaging in an "investigative act[] antecedent . . . to the judicial process" rather than absolutely protected prosecutorial activity.  *Ireland*, 113 F.3d at 1445.  If police had detained Adams unilaterally, or misrepresented the facts when applying for a warrant, she may have been able to bring a viable § 1983 claim against them.  *See al-Kidd*, 131 S. Ct. at 2089 (Ginsburg, J., concurring).  In fact, however, Adams was arrested pursuant to a signed order from the trial judge, and while it was Hanson's job to present information about witnesses to the court, it was the court's duty to respond with appropriate protections.  Therefore, whether or not Adams's detention violated her constitutional rights, Hanson's acts are protected by absolute immunity.

### 3. Complaining Witness

Adams asks us to view Hanson's acts differently:  she claims that Hanson was acting as a complaining witness, not a prosecutor.  At common law, witnesses testifying in court received absolute immunity, *Burns*, 500 U.S. at 489-90, but complaining witnesses—those swearing to the facts in the initial complaint—did not, *Kalina*, 522

---

(1) the witness's testimony is material, and (2) it may become impracticable to secure the presence of the witness by subpoena."  *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003) (emphasis added); *see White by Swafford v. Gerbitz (II)*, 892 F.2d 457, 460-61 (6th Cir. 1989) (reviewing whether probable cause existed for warrantless material-witness detention); *Stone*, 1994 WL 175420, at *3-4 (concluding that police officers did not provide witness with a probable-cause hearing within a reasonable time).

The probable-cause standard may be inapplicable, however, because "[t]he typical arrest warrant is based on probable cause that the arrestee has *committed a crime*," which is not the standard for the issuance of material-witness warrants.  *Al-Kidd*, 131 S. Ct. at 2086 (Kennedy, J., concurring) (emphasis added).  "If material witness warrants do not qualify as 'Warrants' under the Fourth Amendment" such that they are not subject to a probable-cause requirement, they "might still be governed by the Fourth Amendment's separate reasonableness requirement for seizures of the person."  *Id.*; *see Schneyder*, 2011 WL 3211504, at *4-8 (concluding that Fourth Amendment reasonableness requirement, but not probable-cause standard, applies to material-witness detention, and finding Fourth Amendment violation).  For a Fourth Amendment analysis of the federal material-witness statute, see Donald Q. Cochran, *Material Witness Detention in a Post-9/11 World:  Mission Creep or Fresh Start?*, 18 GEO. MASON L. REV. 1, 16-24 (2010).

[7] As the ACLU noted in its brief, Adams provided an affidavit to the district court from an attorney who met with Adams and who claimed to have left a message for Hanson the day after Adams was detained, informing her that Adams was willing to testify.  The parties failed to mention, much less brief, this fact before the district court or on appeal, and there is therefore nothing in the record regarding whether Hanson received the voicemail or passed it on to the proper authorities.  As a result, we cannot speculate as to whether Hanson acted properly on this information or engaged in administrative oversight by failing to notify the trial court of Adams's willingness to testify.

U.S. at 130-31. *But see id.* at 133-35 (Scalia, J., concurring) (disputing that complaining witness was a meaningful label at common law).

A complaining witness is not entitled to absolute immunity, *Malley v. Briggs*, 475 U.S. 335, 340-45 (1986), nor is a prosecutor who performs the same role, *Kalina*, 522 U.S. at 129-31. Hanson, however, was not acting as a complaining witness. In *Kalina*, the Supreme Court assessed whether a prosecutor acted as a complaining witness when she undertook three separate acts: filing an information, a motion for an arrest warrant, and a sworn affidavit, in which she swore that the underlying facts provided to the court to support the arrest warrant were true. *Id.* at 121. An arrest warrant was issued on the basis of the prosecutor's sworn statements. *Id.* The Supreme Court determined that all these acts were prosecutorial except for swearing to the underlying facts in the affidavit, *id.* at 129-31, in which the prosecutor "personally vouched for the truth of the facts set forth in the certification under penalty of perjury," *id.* at 121. By offering sworn testimony, the prosecutor "performed an act that any competent witness might have performed." *Id.* at 129-30. "Testifying about facts is the function of the witness, not of the lawyer," and therefore, "[e]ven when the person who makes the constitutionally required 'Oath or affirmation' is a lawyer, the only function that she performs in giving sworn testimony is that of a witness." *Id.* at 130-31.

Advocating before the trial court in order to procure witness testimony, as Hanson did, is more analogous to the application for a warrant that the Court held to be prosecutorial than the acts of a complaining witness. First, as described *supra*, Hanson's conduct fell within her prosecutorial role. Second, there is no allegation that Hanson provided sworn testimony. Adams asserts that the distinction between a prosecutor's unsworn representations and a witness's sworn representations is a distinction without a difference. But the Supreme Court in *Kalina* found determinative that a prosecutor was testifying to facts "*under penalty of perjury*" or giving "*sworn testimony*." *Id.* at 129, 131 (emphasis added). The Court explained:

> Indeed, except for her act in personally attesting to the truth of the averments in the certification, it seems equally clear that the preparation and filing of the [sworn affidavit] was part of the advocate's function as

well. The critical question, however, is whether she was acting as a complaining witness rather than a lawyer when she executed the certification "*[u]nder penalty of perjury*."

*Id.* at 129 (emphasis added). Following *Kalina*, the Eleventh Circuit in *Rivera* concluded that a prosecutor who provided the court with mistaken information, causing the wrong man to be arrested, did not act as a complaining witness because he did not provide sworn testimony. *Rivera v. Leal*, 359 F.3d 1350, 1354-55 (11th Cir. 2004); *see id.* at 1355 ("The sworn/unsworn distinction is more than critical; it is determinative.").

A prosecutor's acts in preparing and presenting to the court information in support of an arrest, and a witness's acts in swearing to the truth of the facts supporting criminal charges, serve distinct and essential functions. *See Kalina*, 522 U.S. at 129; *Ireland*, 113 F.3d at 1447 (holding that prosecuting attorneys who prepared and presented the contents of a criminal complaint were entitled to absolute immunity). In this case, Hanson's unsworn statements during a "pretrial court appearance[] by the prosecutor in support of taking criminal action against a suspect," are acts of advocacy protected by absolute immunity.[8] *Burns*, 500 U.S. at 492; *see also Sanders v. City & Cnty. of San Francisco*, 226 F. App'x 687, 690 (9th Cir. 2007) (unpublished opinion) (holding that a prosecutor's statements before a grand jury did not render him a complaining witness, and so deprive him of absolute immunity, because "word choice in the course of advocacy cannot turn a prosecutor into a witness").

---

[8] Hanson argues that there is an additional way in which Adams's complaining-witness argument fails: because Adams was not arrested on criminal charges, Hanson could not have been a complaining witness. Hanson did not "initiate[] or procure[] a criminal prosecution" against Adams; rather, she sought to detain Adams in the course of the criminal prosecution of another defendant. *Kalina*, 522 U.S. at 132 (Scalia, J., concurring). In *Kalina*, by contrast, the prosecutor provided a sworn affidavit in support of criminal charges.

It is not clear, however, that this distinction precludes Hanson from qualifying as a complaining witness. An individual who testifies in support of an arrest warrant is a complaining witness. *See Malley*, 475 U.S. at 340-41("[O]ne who procured the issuance of an arrest warrant by submitting a complaint could be held liable if the complaint was made maliciously and without probable cause."). We need not and do not decide whether to apply a different label to an individual who testifies in support of a material-witness warrant as opposed to an arrest warrant for criminal activity. *See al-Kidd*, 131 S. Ct. at 2086 (Kennedy, J., concurring) (comparing constitutional requirements governing typical arrest warrants with material-witness warrants). Hanson does not qualify as a complaining witness because she did not provide sworn testimony and was acting within her prosecutorial role.

### 4. Policy Considerations

Finally, in addition to the prosecutorial nature of Hanson's actions, the policy justifications underlying prosecutorial immunity support absolute immunity in this case. To determine whether a function is protected by absolute immunity, the Supreme Court considers whether: "(1) there is a common law tradition of according immunity in similar situations; (2) denying immunity would subject the prosecutor to the chilling influence of vexatious lawsuits; and (3) there exist adequate checks on prosecutorial abuse other than individual suits against the prosecutor." *Odd*, 538 F.3d at 216.

First, regarding the common law, we find support for prosecutorial immunity in the Court's conclusion that "prosecutors . . . were absolutely immune from damages liability at common law for making false or defamatory statements in judicial proceedings (at least so long as the statements were related to the proceeding)." *Burns*, 500 U.S. at 489-90. "This immunity extended to 'any hearing before a tribunal which perform[ed] a judicial function.'" *Id.* at 490. In advocating before the trial court at a preliminary examination, Hanson made statements related to judicial proceedings that fall within this protection.

Second, regarding vexatious litigation, "pretrial court appearances by the prosecutor in support of taking criminal action against a suspect," which include the summoning of witnesses to a preliminary examination, "present a substantial likelihood of vexatious litigation that might have an untoward effect on the independence of the prosecutor." *Id.* at 492. To be sure, a flood of litigation is less likely to arise from detained witnesses than defendants, if for no other reason than that witness detention is relatively rare.[9] But in cases like this one, involving witnesses to gang activity, a prosecutor seeking to secure a witness's appearance may be subject to harassment by

---

[9]In 2004, United States magistrate judges conducted 4882 material-witness hearings. Charles Doyle, Cong. Research Serv., RL 33077, Arrest and Detention of Material Witnesses 3 n.10 (2005), available at http://www.au.af.mil/au/awc/awcgate/crs/r133077.pdf. Detentions in the context of immigration proceedings make up the bulk of material-witness arrests. *See* Adam Liptak, *For Post-9/11 Material Witness, It is a Terror of a Different Kind*, N.Y. Times, Aug. 19, 2004, available at http://www.nytimes.com/2004/08/19/us/threats-responses-detainees-for-post-9-11-material-witness-it-terror-different.html?src=pm.

either witnesses or defendants seeking to deter witness testimony, which would interfere with the integrity of the criminal proceedings. Absolute immunity for advocacy before a trial court to procure witness testimony thus "serves the policy of protecting the judicial process." *Id.* at 492.

Third, regarding checks on prosecutorial abuse, the judicial process is available as a check on prosecutorial actions, and these "safeguards . . . tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct." *Butz v. Economou*, 438 U.S. 478, 512 (1978). As discussed, *supra*, although it did not prevent the claimed violations in this case, the Michigan material-witness statute provides a judicial process for protecting a witness's rights. In addition, material witnesses may petition for habeas relief or move to quash their arrest warrants.[10] Other checks on prosecutorial misconduct are provided by professional disciplinary actions and the criminal prosecution of prosecutors.[11] *Imbler*, 424 U.S. at 429.

We recognize that witnesses are particularly vulnerable because they are "not entitled to the protections available to criminal defendants, including the appellate process," *Odd*, 538 F.3d at 217, but application of the analytical framework outlined by the Supreme Court dictates absolute immunity for Hanson. Threats to the independence of the prosecutor, other means to protect witnesses' rights, and, most importantly, the prosecutorial function served by Hanson's conduct counsel in favor of the grant of absolute immunity. Absent direction from the Supreme Court, we decline to make a categorical exception to traditional absolute immunity analysis for prosecutorial actions with respect to third-party witnesses. Accordingly, we hold that Prosecutor Hanson is

---

[10] *See* Carolyn B. Ramsey, *In the Sweat Box: A Historical Perspective on the Detention of Material Witnesses*, 6 OHIO ST. J. CRIM. L. 681 nn. 60 & 123 (2009) (discussing habeas relief from material-witness detention and witness-detention lawsuits against police departments); Stacey M. Studnicki & John P. Apol, *Witness Detention and Intimidation: The History and Future of Material Witness Law*, 76 ST. JOHN'S L. REV. 483, 499-502 (2002) (collecting cases reviewing the validity of material-witness warrants).

[11] Such a check was apparently available here. Although there is no information in the record regarding the resolution of the complaint, the State of Michigan's Attorney Grievance Commission received a request for investigation of Hanson arising out of Adams's detention, and Hanson filed an answer detailing her conduct in the case.

entitled to absolute prosecutorial immunity for her acts of advocacy before the state trial court in seeking to procure witness testimony at a preliminary examination.

### III.  CONCLUSION

When making statements at a preliminary examination about the availability of a witness, Hanson functioned as an advocate for the State of Michigan and performed actions intimately associated with the judicial process.  Because she is absolutely immune from suit for her prosecutorial conduct, we **AFFIRM** the district court's grant of summary judgment to Hanson.