NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0344n.06

No. 17-4185

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| GLADYS WILSON, | ) | **FILED** |
| | ) | Jul 13, 2018 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Northern |
| CITY OF SHAKER HEIGHTS, et al., | ) | District of Ohio |
| | ) | |
| Defendants-Appellees. | ) | |
| _____/ | ) | |
| | ) | |

**BEFORE: GUY, BATCHELDER, and BUSH, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.** Gladys Wilson sued a prosecutor and a police officer, claiming they violated her constitutional rights by charging her with misdemeanor disorderly conduct. The district court dismissed the case against the prosecutor, holding that the he was protected by absolute prosecutorial immunity, and granted summary judgment in favor of the police officer, holding that he was entitled to qualified immunity. Wilson appeals both determinations. We affirm.[1]

---

[1] The district court also dismissed the City of Shaker Heights, holding that Wilson did not state a claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Wilson does not appeal the dismissal of the city.

**I.**

Richard and Elizabeth Minkowetz lived next door to plaintiff Gladys Wilson in Shaker Heights, Ohio. Wilson came to believe the Minkowetzes were vandalizing her property and antagonizing her in various ways. To "fight back," Wilson began displaying signs and other material in her window facing the Minkowetzes' property. Some of the signs stated "nasty lil twit" and "Peeping Tom Exposed." Others were nonsense, reading, for example, "Zoomed Zapped and Snapped." Others, such as a sign that read "Thur. 10:50" and a sign identifying the Minkowetzes' address, the Minkowetzes interpreted as messages that Wilson was monitoring their comings and goings. Wilson concedes that the signs referred to, and were directed at, her neighbors.

The Minkowetzes complained to the City of Shaker Heights about the signs, and the city dispatched defendant Officer Martin Dunn of the Shaker Heights Police Department to investigate the Minkowetzes' complaint. Dunn visited Wilson's home and took photos of the sign. He also spoke briefly with Wilson before she retreated inside. That day, Dunn provided his report to defendant Randolph Keller, a prosecutor in Shaker Heights. There is neither allegation nor evidence that Dunn's report contained inaccuracies.

Dunn had no further active involvement in the case until several months later, when Keller's office presented him with an "affidavit to establish probable cause for the issuance of arrest warrant," which restated facts Dunn had relayed in his report. In addition to restating the facts of the investigation, the probable-cause affidavit included a statement that "[t]he affiant believes that the Defendant committed the charged offense[ ]" of

disorderly conduct. Dunn signed and swore to the contents of the affidavit. Keller attached

Dunn's affidavit to the sworn criminal complaint, and the Shaker Heights Municipal Court

issued an arrest warrant upon its finding that there was probable cause to believe Wilson

committed the offense of disorderly conduct. Wilson was summoned to appear for her

arraignment, and she pleaded not guilty. Keller ultimately dismissed the charge against

Wilson.

Wilson then filed this lawsuit against Keller and Dunn, raising five counts under

42 U.S.C. § 1983 and one count of intentional infliction of emotional distress under Ohio

law. Wilson's § 1983 claims against Keller and Dunn included: (1) malicious prosecution;

(2) deprivation of her right to equal protection of the laws; (3) deprivation of her

substantive and procedural due process rights; (4) deprivation of her rights to free speech

and expression; and (5) deprivation of her right to liberty, safety, and privacy. After the

district court dismissed against Keller and granted summary judgment to Dunn, Wilson

appealed.

## II.

Wilson appeals the district court's order granting Keller's motion to dismiss. We

review de novo the district court's decision on a motion to dismiss brought under Federal

Rule of Civil Procedure 12. *Booth Family Tr. v. Jeffries*, 640 F.3d 134, 139 (6th Cir. 2011).

Wilson also appeals the district court's order granting Dunn's motion for summary

judgment. When evaluating a district court's decision to grant summary judgment, we

review de novo. *Simpson v. Ernst & Young*, 100 F.3d 436, 440 (6th Cir. 1996). Summary

judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.

### A.      The Claims Against Prosecutor Keller Were Properly Dismissed

Wilson claimed that Keller violated her rights by issuing a criminal complaint against her when her alleged actions could not possibly have provided probable cause to believe she committed the charged offense. The district court held that Keller was entitled to prosecutorial immunity, a form of absolute immunity that attaches whenever a prosecutor's actions are "intimately associated with the judicial phase of the criminal process." 4/4/17 Op. at 4 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Wilson's accusations centered on Keller signing the criminal complaint, but the district court pointed out that binding Sixth Circuit precedent places this stage of the prosecutorial process squarely within the reach of prosecutorial immunity. *Id.* at 5 (citing *Ireland v. Tunis*, 113 F.3d 1435, 1446-47 (6th Cir. 1997)).

On appeal, Wilson continues to argue that "signing a sworn document is not, in any way, part of the 'judicial phase of the criminal process.'" In other words, Wilson believes a decision to prosecute someone is not covered by prosecutorial immunity. Wilson is incorrect.

The Supreme Court employs a "functional approach to [prosecutorial] immunity." *Burns v. Reed*, 500 U.S. 478, 486 (1991). The goal of that "functional" inquiry is to discern whether the prosecutor was acting in his "'role as advocate for the State,' rather than his role as 'administrator or investigative officer.'" *Id.* at 491 (quoting *Imbler*, 424 U.S. at 430-31 & n.33 (1976)). "Under the functional approach, we 'look to the nature of the function performed, not the identity of the actor who performed it' when assessing whether conduct is prosecutorial, and thus absolutely protected." *Adams v. Hanson*, 656 F.3d 397, 402 (6th Cir. 2011) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)) (internal brackets and quotations omitted). "[I]n initiating a prosecution . . . , the prosecutor is immune from a civil suit for damages under [§] 1983." *Imbler*, 424 U.S. at 431. Actions "undertaken by a prosecutor in *preparing* for the initiation of judicial proceedings" are similarly protected. *Buckley*, 509 U.S. at 273 (emphasis added). This includes the evaluation of evidence. *Adams*, 656 F.3d at 402.

Wilson's argument is founded upon her flawed premise that "Keller's sworn Complaint has nothing to do with initiation of judicial proceedings or trial." The preparation and submission of a criminal complaint is integral to the initiation of criminal judicial proceedings against a defendant, notwithstanding whether the proceeding ever reaches the trial stage. Keller's decision to submit the complaint, which decision was based upon his evaluation of the evidence he had on hand, is therefore protected by prosecutorial immunity.

Wilson insists, however, that by submitting a *sworn* complaint, "Keller was the complaining witness." Indeed, "[a] complaining witness is not entitled to absolute immunity . . . , nor is a prosecutor who performs the same role." *Adams*, 656 F.3d at 408 (citing *Malley v. Briggs*, 475 U.S. 335, 340-45 (1986); *Kalina v. Fletcher*, 522 U.S. 118, 129-31 (1997)) (internal citations omitted). "Testifying about facts is the function of the witness, not of the lawyer." *Kalina*, 522 U.S. at 130. Prosecutors have been found to perform the same role as a complaining witness by "swearing to the underlying facts" in an affidavit for an arrest warrant, *Adams*, 656 F.3d at 408, such that the prosecutor "personally vouched for the truth of the facts set forth in the certification under penalty of perjury," *id.* (quoting *Kalina*, 522 U.S. at 121).

A review of the sworn charging documents reveals that Keller did not vouch for the "underlying facts." Rather, "being duly sworn," Keller "state[d] that Patrolman Martin Dunn of the Shaker Heights Police Department ha[d] filed an Affidavit . . . ." The complaint then recited the contents of Dunn's affidavit, and it attributed the underlying facts to Dunn's investigation. Keller's ultimate sworn statement that Wilson violated the disorderly conduct ordinance was made solely "[u]pon [Dunn's] Affidavit." Accordingly, Keller did not act as the complaining witness; he never asserted that the facts in Dunn's affidavit were true.[2] And the opinion that Wilson committed a crime is a conclusion of

---

[2] Throughout her brief, Wilson emphasizes that Keller "prepared" Dunn's affidavit. But Wilson explains neither what it means to "prepare" an affidavit nor why this substitutes Keller as the affiant-in-fact. Dunn chose to swear to the affidavit; who "prepared" it is therefore irrelevant.

law, distinguishable from the facts on which it was based. The § 1983 claims against Keller were properly dismissed.

### B.     Dunn's Motion for Summary Judgment Was Properly Granted

In Dunn's sworn affidavit, he recounted the details of his visit to Wilson's home. The affidavit also contains the legal conclusion that Dunn, as the affiant, "believes that [Wilson] committed the charged offense(s) due to the information, evidence and knowledge gained from personal observation or relayed to the affiant from other officers, informants or witnesses." Wilson specifies that Dunn's alleged wrongdoing is limited to signing the probable-cause affidavit.

In granting Dunn's motion for summary judgment, the district court held that Wilson could not show that Dunn committed a constitutional violation, and even if he did, Wilson could not show that her rights were clearly established to a person in Dunn's position. For the reasons that follow, we affirm.

### 1.     Malicious prosecution

A malicious-prosecution claim brought under 42 U.S.C. § 1983 requires the plaintiff to prove four elements:

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart

> from the initial seizure. Fourth, the criminal proceeding must
> have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (internal citations, brackets, and quotations omitted). Dunn argued that Wilson failed to satisfy the first two elements of a malicious-prosecution claim. The district court agreed. It held that Dunn could not have "made, influenced, or participated in the decision to prosecute" because Dunn merely relayed the facts of his investigation to Keller, leaving Keller to make the decision to prosecute.

"Whether an officer influenced or participated in the decision to prosecute hinges on the degree of the officer's involvement and the nature of the officer's actions." *Id.* at 311 n.9 (citing *Malley*, 475 U.S. at 344-45 n.7). "The totality of the circumstances informs this fact determination." *Id.* Examples of police conduct that "influenced" a decision to prosecute include providing untruthful testimony and incomplete investigatory materials that were material to the probable-cause determination. *See id.* at 312, 314-15; *see also Kinkus v. Vill. of Yorkville*, 289 F. App'x 86, 91 (6th Cir. 2008) ("[A] police officer cannot be liable for Fourth Amendment malicious prosecution when he did not make the decision to bring charges, as long as the information he submitted to the prosecutor is truthful.").

Wilson does not allege that Dunn falsified the report of his investigation or omitted material facts. And, although Dunn's affidavit reflected his belief that Wilson committed disorderly conduct, there is no evidence that the legal conclusion of Dunn—a non-lawyer with no official prosecutorial role—materially influenced Keller's decision to prosecute.

Based on the undisputed facts, no reasonable juror could conclude that Dunn made, influenced, or participated in Keller's decision to prosecute.[3]

## 2. Equal Protection, due process, and the right to liberty, safety, and privacy

Wilson's appellate brief does not dispute the district court's holding that she failed to state a § 1983 claim founded upon deprivations of her rights to (1) equal protection of the law; (2) liberty, safety, and privacy; or (3) substantive due process. Accordingly, Wilson has forfeited those claims.

Regarding procedural due process, Wilson's appeal merely states, without elaboration or legal support, that being criminally prosecuted for lawfully exercising her First Amendment rights is a per se due process violation and that a question of fact remains as to her due process claim. She makes no argument in opposition to the district court's analysis. This claim is deemed waived. *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997).[4]

## 3. First Amendment

The district court granted summary judgment in Dunn's favor on Wilson's First Amendment § 1983 claim because no reasonable jury could find that Dunn harbored the

---

[3] We therefore decline to address whether the district court correctly ruled, in the alternative, that there was probable cause to prosecute Wilson.

[4] The district court correctly explained that "'it is the Fourth Amendment which establishes procedural protections in this part of the criminal justice area,' not the Fourteenth Amendment." 11/2/2017 Op. at 12 (quoting *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 313 (6th Cir. 2005)). Even absent Wilson's waiver, therefore, we would affirm the dismissal of the portion of Wilson's § 1983 claim that is based on procedural due process.

requisite "retaliatory animus."  11/2/2017 Op. at 13 (citing *Kinkus*, 289 F. App'x at 92);

*see also Hartman v. Moore*, 547 U.S. 250, 259 (2006) ("[A] § 1983 . . . plaintiff must show

a causal connection between a defendant's retaliatory animus and subsequent injury in any

sort of retaliation action . . . .").  In the portion of Wilson's appellate brief discussing her

First Amendment claim, however, she addresses neither the district court's ruling nor the

concept of retaliatory animus as it relates to an investigating officer with no prosecutorial

authority.    Rather,   she   maintains   that   her   actions   were   protected   under   the   First

Amendment, which, even if true, does not sufficiently address the district court's ruling

regarding Dunn's retaliatory animus.

### C.     State-Law Claims

In her complaint, Wilson claimed that, under Ohio law, both Keller and Dunn

committed the tort of intentional infliction of emotional distress against her.  The district

court dismissed this count against Keller, citing (1) Keller's prosecutorial immunity to

state-law claims and (2) Wilson's failure to respond to this defense.  4/4/2017 Op. at 6-7

& n.4.  After discovery, the district court granted Dunn's motion for summary judgment

on this count, concluding that "[n]othing in the record indicates [Dunn committed] extreme

and  outrageous  conduct,  utterly  intolerable  in  our  society," as  Ohio  law  requires.

11/2/2017 Op. at 15; *see also Ondo v. City of Cleveland*, 795 F.3d 597, 611-12 (6th Cir.

2015) (setting forth the elements of an intentional-infliction-of-emotional-distress claim in

Ohio).

After restating the background legal principles that undergird an Ohio intentional-infliction-of-emotional-distress claim, the entirety of Wilson's argument is her statement that "[g]enuine issues of material fact exist." (Pl. Br. at 26-27.) This is insufficient to preserve her claim on appeal.

AFFIRMED.