**Trudi LYTLE, Plaintiff–Appellee,**

v.

**P. Kay CARL; Brian Cram, Defendants,**

and

**Clark County School District, Defendant–Appellant.**

**Trudi Lytle, Plaintiff–Appellee,**

v.

**P. Kay Carl; Brian Cram, Defendants,**

and

**Clark County School District, Defendant–Appellant.**

**Trudi Lytle, Plaintiff–Appellant,**

v.

**P. Kay Carl; Clark County School District; Brian Cram, Defendants–Appellees.**

Nos. 02–16244, 03–15126, 03–15181.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 9, 2004.

Filed Sept. 1, 2004.

---

Robert D. Vannah (Argued), Vannah & Costello, Las Vegas, NV, Richard Segerblom, Adam Ganz, Las Vegas, NV, for the appellee.

Scott Abbott, Carol Davis Zucker, Edwin A. Keller, Kamer, Zucker & Abbott, Las Vegas, NV, Kathy M. Banke (Argued), Reed, Smith, Crosby, Heafey, Oakland, CA, for the appellant.

Before ALARCÓN, BEEZER, and W. FLETCHER, Circuit Judges.

WILLIAM A. FLETCHER, Circuit Judge:

Defendant–Appellant Clark County School District ("the District") appeals a judgment entered on a jury verdict in an action brought under 42 U.S.C. § 1983 by plaintiff-appellee Trudi Lytle, a kindergarten teacher in the District. Lytle contended at trial that the District violated her constitutional rights by retaliating against her because of an earlier action she had brought, and won, against the District. The district court denied the District's post-trial motion for a judgment as a matter of law. The district court first held that municipal liability could be imposed on the District under § 1983 based on the actions of Superintendent Dr. Brian Cram and Assistant Superintendent Dr. Edward Goldman, whom it concluded were "final policymakers." Second, the district court concluded that there was sufficient evidence to support a jury conclusion that Goldman engaged in retaliation and ratified retaliatory acts by other District employees. We affirm the denial of the District's motion for a judgment as a matter of law.

The District also appeals the district court's award of attorneys' fees. Lytle cross-appeals the district court's award of

attorneys' fees and refusal to award taxable costs. We affirm the district court's decisions on fees and costs.

## I. Background

Appellee Trudi Lytle is a teacher at Marion B. Earl Elementary School ("Marion Earl") in the Clark County School District in Nevada. In 1992, Lytle sent a letter to her state senators in which she criticized a new program being implemented in the District. The District then sought to transfer her to another elementary school. When Lytle refused to agree to the transfer, the District fired her. Lytle filed suit under § 1983, claiming that the District had violated her First Amendment right to free speech by retaliating against her for criticizing the District's program. A jury awarded Lytle $135,000 in damages, and she was reinstated at Marion Earl in the fall of 1994 by court order.

In October 1995, Lytle brought this suit under § 1983, alleging that the District and several administrators retaliated against her upon her return to Marion Earl, in violation of her First Amendment rights to free speech and access to the courts. In her complaint, she named as defendants the District and several administrators, including Superintendent Brian Cram, Assistant Superintendent Edward Goldman, Area Superintendents Eva Simmons and P. Kay Carl, and Marion Earl Principal Robert L. Wondrash. The defendants moved for summary judgment, which the district court granted with respect to the free speech claim, but denied with respect to the claim of access to the courts. The court further granted summary judgment to Cram and Carl as individuals based on qualified immunity, but denied summary judgment to the remaining individual defendants and the District. In an earlier appeal, we held that the remaining individual defendants were entitled to qualified immunity, but allowed proceedings against the District to continue. *Lytle v. Wondrash,* 182 F.3d 1083 (9th Cir.1999).

After remand, Lytle went to trial against the District. At the close of Lytle's case-in-chief, the District moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). The District contended that the Board of Trustees ("Board") was the only authorized policymaker, and that since Lytle had not shown any retaliatory action taken by the Board, there was no basis for District liability. The district court disagreed, concluding that Superintendent Cram and Assistant Superintendent Goldman had final policymaking authority. It therefore denied the motion. The jury ultimately found for Lytle, awarding her $75,000 in damages. The District filed a renewed motion for judgment as a matter of law or, in the alternative, for a new trial under Rule 50(b). The district court denied this motion as well, reaffirming its earlier conclusion that Cram and Goldman were final policymakers and concluding that there was sufficient evidence to support a conclusion by the jury that the District had violated Lytle's First Amendment right of access to the courts.

After entry of judgment, Lytle moved for attorneys' fees of $399,865.55. The district court reduced the hourly rate of three of the attorneys for whom fees were sought, deducted hours for duplicative and insufficiently documented work, and reduced the overall figure based on its conclusion that Lytle had not achieved an "excellent result" in the litigation. After reductions, the district court awarded Lytle $239,268.00 in attorneys' fees.

The District appeals the denial of its motion for a judgment as a matter of law and the attorneys' fees award. Lytle

cross-appeals the fee award. For the reasons that follow, we agree with the district court in all respects.

## II. Standards of Review

■ We review a district court's denial of a motion for judgment as a matter of law *de novo*. *Sanghvi v. City of Claremont*, 328 F.3d 532, 536 (9th Cir.2003). "[W]hether a particular official has 'final policymaking authority' is a question of *state law*. ... [T]he identification of those officials whose decisions represent the official policy of the local government unit is itself a legal question to be resolved by the trial judge *before* the case is submitted to the jury." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) (internal quotation marks and citation omitted); *see also Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir.1999). "Once those officials who have the power to make official policy on a particular issue have been identified, it is for the jury to determine whether *their* decisions have caused the deprivation of rights at issue...." *Jett*, 491 U.S. at 737, 109 S.Ct. 2702. When we review the decision of a jury, we view the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of that party. We then determine if there was a legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. *See* Fed.R.Civ.P. 50(a)(1); *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1060 (9th Cir.2000). We will not disturb a jury verdict if it is supported by substantial evidence. *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir.1992).

■ We review a district court's award of attorneys' fees for abuse of discretion. *Webb v. Sloan*, 330 F.3d 1158, 1167 n. 6 (9th Cir.2003). A district court abuses its discretion if it applies an inaccurate statement of the law, or if it bases its decision on a clearly erroneous finding of fact. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir.1997).

## III. The District's Liability Under § 1983

■ In *Monell v. Department of Social Services of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that the word "person" in § 1983 includes municipalities and other local governing bodies such as school districts. A school district's liability under *Monell* may be premised on any of three theories: (1) that a district employee was acting pursuant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3) that a district employee was acting as a "final policymaker." *Webb*, 330 F.3d at 1164. There is no allegation in this case that a District employee was acting pursuant to an express official policy or a longstanding practice or custom. Rather, District liability is based on the conclusion that a District employee, Assistant Superintendent Goldman, was acting as a final policymaker and violated Lytle's First Amendment right of access to the courts by retaliating against her and by ratifying retaliatory acts. *See Rendish v. City of Tacoma*, 123 F.3d 1216, 1219 (9th Cir.1997) (describing claim of retaliation for exercising First Amendment right of access to the courts).

### A. Final Policymaker

■ To determine whether a school district employee is a final policymaker, we look first to state law. *Jett*, 491 U.S. at 737, 109 S.Ct. 2702. A municipal employee may act as a *de facto* policymaker under § 1983 without explicit authority under state law, but we are ordinarily "not justified in assuming that municipal policymaking authority lies somewhere else than

where the applicable law purports to put it." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 126, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). Depending on the circumstances, however, we may also look to the way a local government entity operates in practice. *Jett,* 491 U.S. at 737, 109 S.Ct. 2702 (trial judge must identify official policymakers based on "state and local positive law, as well as custom or usage having the force of law") (citation and quotation marks omitted). While "[a]uthority to make municipal policy may be granted directly by a legislative enactment," it may also be "delegated by an official who possesses such authority." *Pembaur v. Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

■ For purposes of *Monell* liability, the term "policy" includes within its definition not only policy in the ordinary sense of a rule or practice applicable in many situations. It also includes "a course of action *tailored to a particular situation* and not intended to control decisions in later situations." *Pembaur,* 475 U.S. at 481, 106 S.Ct. 1292 (emphasis added). When determining whether an individual has final policymaking authority, we ask whether he or she has authority *"in a particular area, or on a particular issue."* *McMillian v. Monroe County,* 520 U.S. 781, 785, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) (emphasis added). For a person to be a final policymaker, he or she must be in a position of authority such that a final decision by that person may appropriately be attributed to the District. For example, in *Jett,* the plaintiff contended that he was transferred because of his race. In determining whether a school district superintendent was a final policymaker, the Court focused on the question of whether the superintendent "possessed final policymaking authority in the area of employee transfers." 491 U.S. at 738, 109 S.Ct.

2702; *see also McMillian,* 520 U.S. at 785, 117 S.Ct. 1734 (discussing *Jett* ). It does not matter that the final policymaker may have subjected only one person to only one unconstitutional action. As we wrote in *Christie,* "[A] municipality can be liable for an isolated constitutional violation when the person causing the violation has final policymaking authority." 176 F.3d at 1235 (internal quotation marks and citation omitted). *See also Webb,* 330 F.3d at 1166 (holding that Nevada deputy district attorneys were final policymakers where an individual plaintiff contended that criminal charges against him should have been dismissed when "any deputy in the office could have made the decision to dismiss the charges against the Plaintiff without consulting any supervisor").

In this case, the relevant area of policymaking is employment-related decisions, particularly employee discipline. We must determine who, under state law, had final policymaking authority with respect to employment-related disciplinary decisions for District employees. Nevada law designates the Board of Trustees for a School District as the body responsible for setting all District policies:

> Each Board of Trustees is hereby given such reasonable and necessary powers, not conflicting with the constitution and the laws of the State of Nevada, as may be requisite to attain the ends for which the public schools, excluding charter schools, are established and to promote the welfare of school children, including the establishment and operation of schools and classes deemed necessary and desirable.

12552 Nev.Rev.Stat. § 386.350. The Board of Trustees has the authority, as "reasonable and necessary," to delegate its statutory grant of authority to a delegatee of its choice. *Id.; see also* Nev.Rev.Stat. § 386.360(2) (granting power to the Board

to "prescribe or enforce rules, not inconsistent with the law or rules prescribed by the state board, for its own government and the government of public schools under its charge").

The Board of Trustees for the Clark County School District, acting under Nev. Rev.Stat. § 386.350, delegated to the Superintendent of Schools "all powers necessary and proper for the operation of the District which are not inconsistent with law or reserved to the Board by statute, policy, regulation, or contract." *See* District Regulation 2210. The Board of Trustees has also delegated to the Superintendent the authority to subdelegate to District administrators: "The Superintendent may, for good reason, designate and delegate such authority for the operation of the District to a certified administrator employed by the district." *Id.* The delegation by the Board under § 386.350 and Regulation 2210 of "all power necessary and proper for the operation of the District" clearly includes delegation of employment-related disciplinary decisions.

The Board of Trustees explicitly delegated full authority over employee discipline to the Superintendent and his delegatee. District Policy 1213 provides, "The Board of School Trustees does not have the authority to discipline employees. Discipline is a right reserved to the superintendent and other administrators in accordance with the applicable negotiated agreements, laws, board policies, and regulations." Assistant Superintendent Goldman's formal job description stated that he was "the responsible line administrator for contract management" as well as the "district officer responsible for conducting grievance and conflict resolution." Goldman testified at trial that he was "the assistant superintendent for administrative operations and staff relations.... My responsibilities were contract management

and employment management relations...." He also testified that only a neutral arbitrator could reverse his sick leave decisions.

On October 10, 1994, shortly after the beginning of the school year, Goldman sent a memorandum to Wondrash, the Principal of Marion Earl, instructing that "all disciplinary actions relating to Mrs. Lytle including any documents that she is given are to be submitted to my office for review." Superintendent Cram was asked at trial whether that memorandum "suggest[s] to you that Dr. Goldman is making it clear that all disciplinary actions relating to Mrs. Lytle, including all documents that she is given, were to be submitted to his office or reviewed prior to either the action taking place or the document being given to her?" Cram responded: "That is correct."

The District argues that the only policymaker was the Board. It contends that the delegation to Cram and Goldman by the Board was not delegation of final policymaking authority because the delegation was subject to constraints. *See Christie*, 176 F.3d at 1236–37 (to determine whether an official is a final policymaker, "courts consider whether the official's discretionary decisions are 'constrained by policies not of that official's making' and whether the official's decisions are 'subject to review by the municipality's authorized policymakers.' ") (quoting *Praprotnik*, 485 U.S. at 127, 108 S.Ct. 915). The District contends that constraints operated equally on Cram and Goldman to prevent either of them from being final policymakers. It does not contend that the delegation of policymaking authority from Superintendent Cram to Goldman was incomplete.

To support its argument, the District points to District Regulation 2210, under which the Board delegated all "necessary and proper" powers "not inconsistent with

law or reserved to the Board by statute, policy, regulation or contract." To the extent that the District's argument rests on the proposition that this delegation from the Board was incomplete because it required that Cram and Goldman follow the law, the argument is unpersuasive. Under this argument, if a superintendent is instructed in general terms to follow the law, and if that superintendent then violates the law, he or she would be exceeding his delegated authority and would therefore not be a "final policymaker." If that superintendent is not a final policymaker, the district is not liable. This argument proves too much, for the very premise of school district liability for the acts of a final policymaker is that the policymaker violated the constitutional rights of the plaintiff. A general statement by a school board or board of trustees that a superintendent is not authorized to violate the law, without more, cannot be enough to insulate the school district from liability. *See id.*

The core of the District's argument is narrower and more plausible. The District argues that Cram and Goldman were not final policymakers because their employment-related decisions could be reviewed by the Board for consistency with District policy and rules, or by an arbitrator under the grievance process established by the collective bargaining agreement between the teacher's union and the District.

■ The problem with the first part of the District's argument—that decisions were reviewable by the Board—is that the record indicates otherwise. The record reflects that the Board did not review discipline of individual employees such as Lytle, and did not retain the authority to review such discipline. Indeed, the Board had actively renounced its authority over employee discipline. District Policy 1213,

quoted above, states explicitly, "The Board of School Trustees does not have the authority to discipline employees." It continues: "If allegations of misconduct concerning a District employee are brought to the attention of the Board, they will be referred to the appropriate administrator for investigation and action, if necessary." It is clear that the "appropriate administrator" was Goldman. That Goldman's disciplinary decisions were not subject to review by anyone within the District indicates that he was a final policymaker. *See Christie*, 176 F.3d at 1236 ("courts consider whether the official's discretionary decision is 'constrained by policies not of that official's making' and 'subject to review by the municipality's authorized policymakers' ") (quoting *Praprotnik*, 485 U.S. at 127, 108 S.Ct. 915).

The second part of the District's argument—that decisions were reviewable through the grievance process—also fails. The first step of the grievance procedure is for an employee to file a grievance with her immediate supervisor and with Goldman, as the "Assistant Superintendent, Administrative Operations and Staff Relations," or with his designee. The second step involves filing a grievance with Goldman or his designee and meeting with Goldman to discuss the issue. The third step is to submit the grievance to a neutral outside arbitrator. The District argues that because Lytle could have filed grievances under the collective bargaining agreement, which would ultimately be subject to review by an arbitrator from the American Arbitration Association, Goldman was not a final policymaker with respect to any decision that could have been the proper subject of a grievance.

The District's argument mistakes the meaning of "final policymaker" and the role of an independent arbitrator. The arbitrator does not work for the District.

In determining who was a final policymaker for the District, we focus on whether the official's decisions were subject to review by the *District's* authorized policymakers. *Christie,* 176 F.3d at 1236–37. That someone outside of the District may reverse the District official's decision does not mean that the official does not speak for the District when he or she initially makes that decision. *See also Jackson v. Gates,* 975 F.2d 648, 655 (9th Cir.1992) (explaining that an "arbitrator is a neutral entity who is confined to the interpretation and application of the collective bargaining agreement" with "no authority to set or alter any policy whatsoever").

The delegation of final policymaking authority by the Board in this case distinguishes it from cases in which we and other circuits have found school superintendents and other officials to lack final policymaking authority. For instance, in *Gillette,* we held that a fire chief's actions in firing the plaintiff could not form the basis for municipal liability because he was not a final policymaker. 979 F.2d at 1350. In reaching that conclusion, we relied on the fact that the "City Charter and ordinances grant authority to make City employment policy *only* to the City Manager and the City Council." *Id.* (emphasis added). Absent any evidence that the fire chief actually made policy, we concluded that he was not a final policymaker. *Id.* Similarly, in *Duda v. Board of Education of Franklin Park Public School District No. 84,* the Seventh Circuit concluded that school officials were not final policymakers, since the Illinois School Code required that all personnel decisions be made by the School Board, and only permitted school officials to make *recommendations* for personnel actions to the Board. 133 F.3d 1054, 1061 (7th Cir.1998) (citing 105 Ill. Comp. Stat. 5/10–20.5; 5/10–21.4a) (emphasis added); *compare Mazanec v. N. Judson–San Pierre Sch. Corp.,* 798 F.2d 230,

235 (7th Cir.1986) (holding that a superintendent was a final policymaker with respect to monitoring attendance since he was required to do so by law).

Based on the evidence presented at trial, the district court concluded that Cram and Goldman were final policymakers:

> Plaintiff provided sufficient evidence at trial that the Board has clearly designated powers necessary for the operation of the District to Dr. Cram, and that he may, in turn, delegate those powers to a subordinate administrator.

> ... Plaintiff proved at trial that only the Superintendent or his designee deals with employee complaints and employee discipline. The Board does not regularly discipline employees. With respect to Assistant Superintendent Goldman, Dr. Cram has delegated policymaking authority to handle personnel matters such as hiring, placement, sick leave, and discipline.

> ... Regulation 2210 ... establishes that Superintendent Cram and his designees are the District's final policymakers with respect to personnel issues.

We agree with the district court. Given that Cram and Goldman were final policymakers, the next question is whether either of them retaliated against Lytle or ratified retaliation by others.

### B. Retaliation and Ratification

Even minor acts can constitute retaliation sufficient to support a § 1983 claim. *Coszalter v. City of Salem,* 320 F.3d 968, 975 (9th Cir.2003). While trivial acts of "bad-mouthing" may not amount to retaliation, retaliation certainly includes "instigating unwarranted [ ] disciplinary actions, or engaging in campaigns of harassment and humiliation...." *Id.* at 976.

We focus on the evidence of Goldman's retaliation because Lytle presented

the most evidence about Goldman's actions, because this evidence is more than sufficient to uphold the jury's imposition of liability on the District, and because the district judge relied on the evidence against Goldman in upholding the jury's verdict. Lytle presented evidence that Goldman investigated her request for two days of sick leave, requiring her to submit several notes from physicians to support her request. Ultimately, Goldman directed that Lytle be denied paid sick leave.[1] Although Goldman testified that he did so because of the circumstances surrounding the sick days—namely that the sick days corresponded to days on which Lytle was to attend meetings that she had previously requested be rescheduled—a reasonable jury could have believed that the investigation and denial of sick leave were carried out in retaliation for Lytle's earlier lawsuit.

In addition to evidence of actions taken by Goldman himself, Lytle also produced evidence that Goldman ratified retaliatory actions taken by other District employees. A municipality may be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions. *Christie*, 176 F.3d at 1238. To show ratification, a plaintiff must show that the "authorized policymakers approve a subordinate's decision and the basis for it." *Id.* at 1239 (quoting *Praprotnik*, 485 U.S. at 127, 108 S.Ct. 915). The policymaker must have knowledge of the constitutional violation and actually approve of it. A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim. *Id.*

After Goldman's October 10, 1994 memo, instructing that he was to review "all disci-

plinary actions relating to Mrs. Lytle, including any documents that she is given," the jury was entitled to believe Goldman was aware of all subsequent discipline taken against Lytle. In November 1994, Area Superintendent Simmons reprimanded Lytle in front of her class after Lytle went to another teacher's classroom to retrieve some materials she thought were hers; Lytle was thereafter required to ask permission to go into any other teacher's classroom. Lytle was also called to meetings with her supervisors in December 1994, January 1995, and February 1995 to discuss her performance. At these meetings, she was instructed to follow written directives. Written conference summaries were placed in her personnel files. These conference summaries are a form of "progressive discipline," according to Cram's trial testimony. As with the investigation into Lytle's sick leave, while the administrators offered possibly legitimate reasons for their actions, a reasonable jury could have found that the administrators were in fact retaliating against Lytle for her earlier lawsuit. *See Coszalter*, 320 F.3d at 974–75.

Lytle also presented evidence at trial that a log of her daily activities was kept, and that the administrators failed to adequately investigate her complaints of harassment. As the district court stated in its order denying the District's request for judgment as a matter of law or a new trial, Lytle testified at trial to numerous "incidents of retaliation, [that] were not isolated, but rather established a pattern of conduct which supported a [jury] finding of ratification of retaliatory acts, as required to impose municipal liability."

---

1. Goldman's denial was never processed and Lytle's pay was never docked for the days she took off, because, as Goldman testified in his deposition and at trial, the judge in her first lawsuit had imposed a 60–day moratorium on adverse actions by all parties as part of the court's supervision of Lytle's return to work.

There was sufficient evidence from which a jury could conclude that Goldman approved of the retaliatory acts by Principal Wondrash and Area Superintendent Simmons, rather than simply failed to overrule them. Goldman specifically requested that he be given all documents related to discipline of Lytle. He acted as the liaison with the District's outside counsel. In addition, he had been a defendant in Lytle's earlier suit. Further, Wondrash specifically testified at trial that he collaborated with Goldman on some of the conferences and directives that were given to Lytle. The jury could reasonably infer from this evidence that Goldman actively participated in the discipline of Lytle and ratified the decisions of his subordinates.

### C. Jury Instruction

The District argues that the trial court should have instructed the jury not to consider certain acts by Wondrash and Simmons as evidence of ratification, on the theory that Goldman and Cram neither knew nor approved of these acts. According to the District, the district court's failure to give the jury a limiting instruction allowed the jury to find the District liable on a theory of *respondeat superior,* and therefore requires us to grant a new trial. *See Bd. of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (*respondeat superior* is an impermissible theory of municipal liability under § 1983).

The failure to give a limiting instruction was not erroneous. *See Swinton v. Potomac,* 270 F.3d 794, 805 (9th Cir.2001) (reviewing jury instructions for prejudicial

error). The trial court correctly instructed the jury on the legal theory for ratification.[2] *See Christie,* 176 F.3d at 1240. In conjunction with the district court's instruction that the Board, Cram, and Goldman were final policymakers, the ratification instruction provided the jury with the proper legal framework to apply when evaluating all the admissible evidence presented at trial. In light of our holding that the jury could have properly found that Goldman ratified the decision of the District's employees, the jury *should* have been able to consider evidence of the misconduct of individuals who were not final policymakers for the District, and to weigh credibility and inferences when deciding whether there was sufficient ratification.

### D. Attorneys' Fees

In addition to appealing the merits, both sides challenge the district court's award of attorneys' fees under 42 U.S.C. § 1988. The district court properly stated and applied the "hybrid approach," under which the district court should first determine the lodestar amount by calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Jordan v. Multnomah County,* 815 F.2d 1258, 1262 (9th Cir.1987) (discussing *Hensley v. Eckerhart,* 461 U.S. 424, 439, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The district court may then, in its discretion, adjust this amount "on the basis of 'other considerations.'" *Id.* (quoting *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933).

The district court first determined the market rate of Lytle's lawyers. It adopted

---

**2.** The Instruction on Ratification stated that "[a] municipality can be liable for an isolated constitutional violation if the final policymaker ratified a subordinate's actions. For purposes of this case, the Board of Trustees, the Superintendent, and Dr. Goldman are policymakers. To show ratification, a plaintiff must prove that the authorized policymakers approve a subordinate's decision and the basis for it. Accordingly, ratification requires both knowledge of the alleged constitutional violation, and proof that the policymaker specifically approved of the subordinate's act."

the upper range of the rates contained in the defendant's opposition. Given that Lytle produced no evidence other than the rates of her own attorneys, the district court's findings as to the prevailing market rate were not clearly erroneous. *See Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir.2001) (plaintiff bears burden of proof as to prevailing market rate).

Nor were the district court's findings clearly erroneous with respect to the number of hours worked by the attorneys. The district court largely accepted the number of hours submitted by the attorneys, but deducted hours for, *inter alia,* time for a new attorney to learn the case. Although the District claims that the records submitted by Lytle's attorneys were not descriptive enough to support the hours claimed,"[p]laintiff's counsel ... is not required to record in great detail how each minute of his time was expended." *Trs. of Dirs. Guild of Am. Producer Pension Benefits Plans v. Tise,* 234 F.3d 415, 427 (9th Cir.2003) (quoting *Hensley,* 461 U.S. at 437 n. 12, 103 S.Ct. 1933). Although the time descriptions are minimal, they establish that the time was spent on the matters for which the district court awarded attorneys' fees. *Id.* at 234 (counsel need only "identify the general subject matter of [their] time expenditures."). The district court's determination of the number of hours is therefore supported by the record and is not clearly erroneous.

■ Multiplying the hourly rate for each attorney by the number of hours worked, the district court arrived at a value of $320,191.00 in attorneys' fees. It then proceeded to the second step of the inquiry, namely whether "other circumstances" warranted an adjustment. The district court concluded that, in light of the limited jury award, it would reduce the recovery to $239,268.00. A district court may exercise discretion and reduce an

award when the prevailing party's success is limited. *Sorenson,* 239 F.3d at 1147 (citing *Hensley,* 461 U.S. at 436–47, 103 S.Ct. 1933). Given that Lytle did not prevail on a majority of her original claims, the district court did not abuse its discretion in reducing the fee by this amount. *Hensley,* 461 U.S. at 436, 103 S.Ct. 1933 (noting that "had respondents prevailed on only one of their six general claims ... a fee award based on the claimed hours clearly would have been excessive"). The reduction in attorneys' fees awarded was therefore not an abuse of discretion.

Lytle's counsel also contend that they should have received costs in the amount of $29,871.72, although they failed to timely file a bill of costs as required by Nevada Local Rule 54–1. The district courts are free to adopt local rules establishing deadlines for filing claims for attorneys' fees and costs. *White v. New Hampshire Dep't of Employment Sec.,* 455 U.S. 445, 453–54, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). The district court awarded Lytle $1,770.69 in non-taxable costs, but refused to award the remaining taxable costs because of the late filing. Lack of diligence by Lytle's counsel led to the late filing, and Lytle cites no persuasive authority that the local rule should not have been enforced.

### Conclusion

The district court properly denied the District's motion for judgment as a matter of law. It correctly concluded that Goldman and Cram were final policymakers for the District's employee discipline policy. Further, there was sufficient evidence from which a jury could reasonably conclude that Goldman retaliated against Lytle and ratified the retaliatory actions of other District employees. Finally, the district court did not abuse its discretion in

awarding attorneys' fees under 42 U.S.C. § 1988 or in failing to award taxable costs.

**AFFIRMED.**