**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DETRICE GARMON,<br>  *Plaintiff-Appellant*,<br><br>v.<br><br>COUNTY OF LOS ANGELES;<br>STEVE COOLEY, individually<br>and in his official capacity;<br>DEPUTY DA MICHELLE<br>HANISEE, individually and<br>in her official capacity;<br>KAISER PERMANENTE,<br>  *Defendants-Appellees*. | No. 12-55109<br><br>D.C. No.<br>2:10-cv-06609-SJO-PJW<br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted May 2, 2016
Pasadena, California

Filed July 5, 2016

Before: Milan D. Smith, Jr. and Jacqueline H. Nguyen, Circuit Judges, and Claudia Wilken,[*] Senior District Judge.

Opinion by Judge Wilken

## SUMMARY[**]

### Civil Rights

The panel reversed in part the district court's dismissal of a civil rights action brought by a plaintiff who was an alibi witness in her son's murder trial.

Because the plaintiff was scheduled to undergo brain surgery with an uncertain outcome, her deposition was taken. She authorized her medical provider to disclose to the prosecution medical records related to her brain tumor. The lead prosecutor instead subpoenaed all of her medical records, erroneously representing that the plaintiff was the murder victim. The plaintiff ultimately testified at her son's trial, and the prosecutor used her medical records to undermine her credibility.

The panel held that the prosecutor and her supervisor, the Los Angeles County District Attorney, were not entitled to

---

[*] The Honorable Claudia Wilken, Senior District Judge for the U.S. District Court for the Northern District of California, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

absolute immunity for the prosecutor's misrepresentations in her declaration supporting the subpoena application. Following other circuits, the panel declined to adopt a rule that absolute prosecutorial immunity is unavailable against claims of unindicted third-party witnesses. The panel held that the prosecutor was absolutely immune for issuing the subpoena and for using the plaintiff's medical information at trial. She was entitled to qualified immunity, at most, for her declaration. The supervising attorney was immune to the same extent as the prosecutor.

The panel held that the district court abused its discretion by denying the plaintiff leave to amend her claim under 42 U.S.C. § 1983 against the County of Los Angeles to allege that actions pursuant to the County's policy or custom caused her injuries.

The panel held that the county, the district attorney, and the prosecutor were not entitled to state statutory immunity because the claims against them were not malicious prosecution claims.

The panel also reversed the dismissal of state law claims against the medical provider. It remanded the case to the district court.

---

**COUNSEL**

Brian K. Morris (argued) and Julia A. Vogelzang, Duane Morris LLP, San Diego, California, for Plaintiff-Appellant.

Millicent L. Rolon (argued), Principal Deputy County Counsel; Roger H. Granbo and Jennifer A.D. Lehman,

Assistant County Counsel; John F. Krattli, County Counsel; Mary C. Wickham, Interim County Counsel; Los Angeles County Counsel, Los Angeles, California; for Defendants-Appellees County of Los Angeles, Steve Cooley and Michele Hanisee.

David P. Pruett (argued), Brenda M. Ligorsky, and Michael J. Trotter; Carroll, Kelly, Trotter, Franzen, McKenna & Peabody, Long Beach, California; for Defendant-Appellee Southern California Permanente Medical Group.

## OPINION

WILKEN, Senior District Judge:

Plaintiff-Appellant Detrice Garmon was an alibi witness in her son's murder trial.[1]  Because she was scheduled to undergo brain surgery with an uncertain outcome, her deposition was taken pursuant to state court procedure.  She authorized Defendant-Appellee Southern California Permanente Medical Group ("Kaiser") to disclose to the prosecution medical records related to her brain tumor.  The next day, Defendant-Appellee Los Angeles County Deputy District Attorney Michele Hanisee, the lead prosecutor, issued a subpoena duces tecum to Kaiser instead requesting all of Garmon's medical records.  Hanisee provided a declaration in support of the application for the subpoena duces tecum, erroneously representing that Garmon was the murder victim in her son's trial.  Garmon ultimately testified

---

[1] All facts are taken from the underlying complaint and from documents which are attached to the briefs on the underlying motion to dismiss.

at her son's trial, and Hanisee used Garmon's medical records from Kaiser to undermine Garmon's credibility.

Garmon, acting *pro se*, filed a complaint in district court for monetary damages under 42 U.S.C. § 1983 and several state law causes of action against Hanisee and Kaiser, and against Defendants-Appellees Steve Cooley, the Los Angeles County District Attorney at the time of the trial, and the County of Los Angeles. Hanisee, Cooley and the County are referred to as the "County Defendants." Garmon later filed a First Amended Complaint, which is the operative complaint. The court dismissed all causes of action against the County Defendants with prejudice and against Kaiser without prejudice.

We reverse in part and remand for further proceedings. Hanisee and Cooley are not entitled to absolute immunity for Hanisee's misrepresentations in her declaration supporting the application for the subpoena duces tecum. Further, the court abused its discretion by denying Garmon leave to amend her § 1983 claim against the County. The County Defendants are not entitled to the claimed state statutory immunity because the claims against them are not malicious prosecution claims. Finally, because we reverse the dismissal of certain federal claims, we reverse the district court's dismissal of state law claims against Kaiser.

## I. Background

### A. Underlying Facts

The release Garmon signed encompassed "Information Regarding Specific Injury or Treatment (from 1/08 to

Present)," x-ray reports and "only information regarding tumor in pituitary gland."

Hanisee mailed a subpoena duces tecum to Kaiser with a cover letter, which erroneously stated that Garmon was the victim in a murder prosecution. Hanisee evoked a federal regulation under the Health Insurance Portability and Accountability Act (HIPAA) that permits disclosure without the consent or notification of the subject of the subpoena. The subpoena commanded Kaiser to produce the documents in its custody "described in the copy of the application for subpoena duces tecum attached hereto which is incorporated herein by reference." The application attached to the subpoena requested "[a]ny and all medical records for DETRICE GARMON," and explained that the "medical records will indicate the character and extent of the injuries inflicted upon DETRICE GARMON and are necessary to establish the elements of the charged crime." The application provided that the statements contained therein were true and correct under penalty of perjury. Accordingly, Kaiser produced all of Garmon's medical records, not just those subject to Garmon's consent, and did not notify Garmon.

When Garmon testified at her son's trial, Hanisee "published all of [Garmon's] medical records that she had subpoenaed from Kaiser Permanente," without redacting them, "for the sole purpose of discrediting [Garmon's] testimony." Garmon's son was ultimately convicted of murder.

## B. Procedural History

A magistrate judge issued a Report and Recommendation (R&R) on County Defendants' motion to dismiss; the court

adopted it in full. The R&R concluded that, under *Imbler v. Pachtman*, 424 U.S. 409 (1976), Hanisee and Cooley were absolutely immune from suit in their personal capacities. Further, because they were representatives of the State, they could not be sued in their official capacities. With regard to the claim against the County, the R&R explained that Garmon alleged that Hanisee's improper conduct *violated* county policy; a § 1983 claim against a municipality such as a county requires that the misconduct be *pursuant* to county policy. The R&R recommended that, because amending her complaint to state the latter would necessarily contradict the operative complaint, leave to amend be denied.

Next, the R&R concluded that County Defendants were immune under California Government Code sections 821.6 and 815.2 from suit for Garmon's state law claims.

Finally, the R&R proposed the dismissal of the claims against Kaiser. It explained that there is no private cause of action under HIPAA, and that Kaiser was not amenable to suit under § 1983 for producing Garmon's records. Because Garmon alleged no federal cause of action against Kaiser, and because the R&R recommended dismissing the federal claims against County Defendants, the R&R recommended declining to exercise supplemental jurisdiction over Garmon's state law claims against Kaiser.

Garmon timely appealed.[2] We have jurisdiction under 28 U.S.C. §§ 1331, 1367(a) and 1291.

---

[2] Garmon sued Hanisee and Cooley in their official and personal capacities. She does not appeal the dismissal of the official-capacity claims.

## II. Standards of Review

We review de novo a district court's dismissal of a complaint for absolute immunity. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). In conducting the review, we accept the factual allegations of the operative complaint, as well as the documents to which it refers, as true and construe them in the light most favorable to the plaintiff. *See AE v. Cty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012); *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

We review for abuse of discretion the district court's denial of leave to amend. *AE*, 666 F.3d at 636. "A district court abuses its discretion by denying leave to amend unless amendment would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities." *Id.*

We review de novo a district court's interpretation of state law. *See JustMed, Inc. v. Byce*, 600 F.3d 1118, 1125 (9th Cir. 2010).

## III. Discussion

### A. Federal Prosecutorial Immunity

### 1. Absolute Immunity

Prosecutorial immunity applies to § 1983 claims. *Imbler*, 424 U.S. at 427. State prosecutors are absolutely immune from § 1983 actions when performing functions "intimately associated with the judicial phase of the criminal process," *id.* at 430, or, phrased differently, "when performing the traditional functions of an advocate." *Kalina v. Fletcher*,

522 U.S. 118, 131 (1997). "Prosecutors are entitled to qualified immunity, rather than absolute immunity, when they perform administrative functions, or 'investigative functions normally performed by a detective or police officer.'" *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005) (quoting *Kalina*, 522 U.S. at 126).

In determining whether actions of government officials are entitled to absolute immunity, or only subject to qualified immunity, we focus on "the nature of the function performed." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)). Absolute immunity applies when "initiating a prosecution" and "presenting the State's case," *Imbler*, 424 U.S. at 431, and during "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial . . . after a decision to seek an indictment has been made," *Buckley*, 509 U.S. at 273. By contrast, absolute immunity does not apply when a prosecutor "gives advice to police during a criminal investigation," "makes statements to the press," or "acts as a complaining witness in support of a[n arrest] warrant application." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) (citations omitted). When considering acts of obtaining evidence, we look to the goal of the action to determine its function. *See Torres v. Goddard*, 793 F.3d 1046, 1053 (9th Cir. 2015) (distinguishing seeking a warrant to obtain evidence to prosecute an indictment, which is protected by absolute immunity, from seeking a warrant to obtain evidence as "collateral investigation into new crimes," which is not protected by absolute immunity).

Absolute immunity "is an extreme remedy, and it is justified only where 'any lesser degree of immunity could

impair the judicial process itself.'" *Lacey v. Maricopa Cty.*, 693 F.3d 896, 912 (9th Cir. 2012) (en banc) (quoting *Kalina*, 522 U.S. at 127). The "official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991) (citing *Forrester*, 484 U.S. at 224).

### 2. Third-Party Witness Plaintiffs

Garmon argues that we should adopt a rule that absolute prosecutorial immunity is unavailable against claims of unindicted third-party witnesses.[3] She cites no circuit court opinion adopting such a rule and we decline to do so here.

The Seventh Circuit declined to adopt such a rule because, in *Imbler*, the Court "at least implied that prosecutorial immunity also applies to suits by witnesses . . . by focusing on whether the acts complained of were within the scope of the prosecutorial function rather than on the identity of the plaintiff." *Daniels v. Kieser*, 586 F.2d 64, 69 (7th Cir. 1978). The Second Circuit also declined to adopt such a distinction, quoting the reasoning in *Daniels* and emphasizing that in either case the "fundamental question" of whether the activity occurred while "acting as an advocate in a judicial proceeding" remains the same. *Betts v. Richard*, 726 F.2d 79, 81 (2d Cir. 1984) (citation omitted). *See also*

---

[3] In *al-Kidd v. Ashcroft*, 580 F.3d 949 (9th Cir. 2009), *rev'd on other grounds*, 563 U.S. 731 (2011), we held that "when a prosecutor seeks a material witness warrant in order to investigate or preemptively detain a suspect, rather than to secure his testimony at another's trial, the prosecutor is entitled at most to qualified, rather than absolute, immunity." *Id.* at 963. However, our inquiry focused on whether the action was investigative or prosecutorial, rather than on the plaintiff's role. *Id.* at 958–64.

*Adams v. Hanson*, 656 F.3d 397, 403–04 (6th Cir. 2011) (granting absolute immunity where plaintiff was a third-party witness and amicus had argued that absolute immunity therefore should not apply).[4]

We are persuaded by the reasoning of the Seventh, Second and Sixth Circuits.

### 3. Hanisee's Immunity

Construed in the light most favorable to Garmon, the operative complaint alleges three acts performed by Hanisee: issuing the subpoena duces tecum, drafting its supporting declaration and publicizing Garmon's medical records at trial to discredit her testimony. Garmon does not dispute that Hanisee is entitled to absolute immunity for performing the "traditional functions of an advocate" when using Garmon's medical information at trial. *See Kalina*, 522 U.S. at 131. We conclude that Hanisee is absolutely immune for issuing the subpoena duces tecum, but that the district court erred in granting absolute immunity to Hanisee for the accompanying declaration.

Hanisee is entitled to absolute immunity for issuing the subpoena duces tecum to Kaiser because a "prosecutor gathering evidence is more likely to be performing a quasi-judicial advocacy function when the prosecutor is 'organiz[ing], evaluat[ing], and marshaling [that] evidence'

_____

[4] *Adams* distinguished *Odd v. Malone*, 538 F.3d 202 (3d Cir. 2008), a Third Circuit case in which the court concluded that a prosecutor was not entitled to absolute immunity in a third-party-witness-plaintiff case, because the offending actions were "administrative tasks," rather than prosecutorial tasks. *Adams*, 656 F.3d at 403, 406.

in preparation for a pending trial, in contrast to the police-like activity of '*acquiring* evidence which might be used in a prosecution.'" *Genzler*, 410 F.3d at 639 (quoting *Barbera v. Smith*, 836 F.2d 96, 100 (2d Cir. 1987)) (alterations in original). Although issuing a subpoena is necessarily an evidence-gathering action, here it was issued in preparation for evaluating and countering a defense witness's testimony. In light of the timing and context, it is clear that Hanisee's subpoena was directed at obtaining evidence in preparation for trial. Thus, absolute immunity properly applies to this act.[5]

However, the district court erred in concluding that Hanisee is entitled to absolute immunity for presenting a false statement in a declaration supporting her application for the subpoena duces tecum.

In *Kalina*, the Supreme Court distinguished the preparation and filing of charging documents from the execution of a supporting certification "under penalty of perjury," holding that the latter is not protected by absolute

---

[5] Appellant also argues that, as in *Lacey*, Hanisee evaded the judicial process in issuing the subpoena. That case concerned a prosecutor who neither obtained the grand jury's prior consent before issuing a subpoena nor notified both the grand jury's foreperson and the presiding judge within ten days of issuing the subpoena, as Arizona law required. The Ninth Circuit concluded that absolute immunity was inappropriate because the prosecutor "side-stepped the judicial process." *Lacey*, 693 F.3d at 914. However, this case is distinguishable because, unlike Arizona law, California criminal subpoena law does not require judicial oversight before issuance. Rather, judicial oversight does not occur until after the sealed documents are delivered or opened in court. *See People v. Blair*, 25 Cal. 3d 640, 651 (1979). Further, although Hanisee may have misled Kaiser with regard to HIPAA requirements, she did not side-step the judicial process by issuing the subpoena.

immunity. 522 U.S. at 128–29. There, the prosecutor was acting under Washington state law, which required that an arrest warrant be supported by an affidavit or sworn testimony. *Id.* at 129. However, the Court explained, it was not necessary for the prosecutor to provide that testimony; rather, the prosecutor "performed an act that any competent witness might have performed." *Id.* at 129–30. No prosecutorial judgment could "affect the truth or falsity of the factual statements themselves. Testifying about facts is the function of the witness, not of the lawyer." *Id.* at 130. Thus, when executing the affidavit, the prosecutor in *Kalina* was not performing the traditional function of an advocate. *Id.* at 131. Following *Kalina*, we explained that "a prosecutor sheds absolute immunity when she acts as a 'complaining witness' by certifying that the facts alleged within an affidavit are true." *Waggy v. Spokane Cty.*, 594 F.3d 707, 711 (9th Cir. 2010); *see also Cruz v. Kauai Cty.*, 279 F.3d 1064, 1067–68 (9th Cir. 2002) (holding that a prosecutor was not entitled to absolute immunity for swearing to facts in support of a bail revocation motion).

The circumstances here are similar to those in *Kalina*. Under California law, like Washington law as described in *Kalina*, the party filling out and issuing the subpoena need not be an attorney. *People v. Blair*, 25 Cal. 3d 640, 648 n.6 (1979) (noting that, under California Penal Code section 1326, a subpoena duces tecum to a third party in a criminal proceeding may be issued by the "clerk of the court in which the action is to be tried, the district attorney, or his investigator, among others"). Further, like the prosecutor in *Kalina*, Hanisee's declaration states particular facts under penalty of perjury, making her more akin to a witness than a prosecutor in this function. Thus, following *Kalina*, Hanisee

is not entitled to absolute immunity for her declaration in support of the subpoena.

In sum, the district court erred in concluding that Hanisee is absolutely immune from suit here. We conclude that she is entitled to absolute immunity for issuing the subpoena and using the medical records at trial, but to qualified immunity, at most, for her declaration.

### 4. Cooley

An attorney supervising a trial prosecutor who is absolutely immune is also absolutely immune. *Van de Kamp*, 555 U.S. at 345–46. So are prosecutors who conducted "*general* office supervision or office training." *Id.* at 346–48. "But nothing in *Van de Kamp* permits us to grant a supervising prosecutor absolute immunity for supervising an activity that's *not* protected by absolute immunity under *Imbler* and its progeny." *Torres*, 793 F.3d at 1058. Thus, Cooley is immune to the same extent as Hanisee.

### B. Federal Claim Against County

The district court was correct that the allegations in the operative complaint are insufficient to state a § 1983 claim against the County, but it abused its discretion in denying leave to amend.

Section 1983 applies to the County of Los Angeles. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, plaintiffs "who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick v.*

*Thompson*, 563 U.S. 51, 60–61 (2011) (quoting *Monell*, 436 U.S. at 691).

Appellant's operative complaint does not sufficiently allege that actions pursuant to the County's policy or custom caused her injuries.  Appellant does not dispute this determination.  Instead, she argues that she should have been granted leave to amend.

A district court does not abuse its discretion in denying leave to amend where it would have been impossible for the plaintiff to amend the complaint to state a viable claim "without contradicting any of the allegations of his original complaint."  *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990).  Here, the district court abused its discretion because the operative complaint could be construed to encompass multiple theories of § 1983 municipal liability, some of which would not necessarily be contradicted in an amended complaint.

A local government may be liable under § 1983 for an official's conduct where the official had final policymaking authority concerning the action at issue, and where the official was the policymaker for the local governing body for the purposes of the particular act. *Goldstein v. City of Long Beach*, 715 F.3d 750, 753 (9th Cir. 2013).  In fact, a municipality may be liable for an "isolated constitutional violation when the person causing the violation has final policymaking authority." *Lytle v. Carl*, 382 F.3d 978, 983 (9th Cir. 2004) (citation omitted).  A municipality's failure to train its employees may also constitute an actionable policy or custom under § 1983 if it amounts to deliberate indifference to the rights of persons with whom the untrained employees come into contact. *Connick*, 563 U.S. at 61.

A *pro se* complaint must be held to less stringent standards than formal pleadings drafted by an attorney. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "This rule is particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). Because Garmon filed her operative complaint *pro se*, we "construe the pleadings liberally" and afford her "the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc)). Although the operative complaint states that Garmon is suing the County Defendants for violating a county policy, it includes other allegations that might support viable theories for county liability. For example, the operative complaint states that "Steve Cooley . . . is [a] policy maker for the District Attorney's office." An amended complaint could add allegations to bolster a claim that the facts alleged constitute an isolated constitutional violation stemming from Cooley's actions as a final policymaker. *See Lytle*, 382 F.3d at 983. The operative complaint also states that Hanisee, "acting on behalf of the County of Los Angeles . . . acted negligently . . . by misusing the power of her office." Garmon might be able to allege more facts that would support a claim that Hanisee's actions were performed as a final policymaker. Likewise, the operative complaint alleges claims for "Negligent training" and "Negligent supervision." Garmon could allege additional facts relating to the County's failure to train and supervise. *See Connick*, 563 U.S. at 61.

Allegations based on these theories could be consistent with the operative complaint, rather than necessarily inconsistent with it as the district court concluded. Thus, it was an abuse of discretion to deny leave to amend. The court shall grant Garmon leave to amend on remand.

## C. State Immunity for County Defendants

Next, we turn to Garmon's state law claims, which the district court dismissed based on state statutory immunity. California Government Code section 821.6 states: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." The County's immunity would follow from Hanisee's and Cooley's immunity. *See* Cal. Gov't Code § 815.2.

"When interpreting state law, a federal court is bound by the decision of the highest state court." *Hewitt v. Joyner*, 940 F.2d 1561, 1565 (9th Cir. 1991) (citation omitted). In *Sullivan v. County of Los Angeles*, 527 P.2d 865, 871 (Cal. 1974), the California Supreme Court interpreted section 821.6 as "confining its reach to malicious prosecution actions." It is true that, since *Sullivan*, California Courts of Appeal have interpreted section 821.6 more expansively. *See, e.g.*, *Kayfetz v. State*, 156 Cal. App. 3d 491, 497 (1984) ("section 821.6 is not limited to suits for damages for malicious prosecution, although that is a principal use of the statute"); *Amylou R. v. Cty. of Riverside*, 28 Cal. App. 4th 1205, 1211 (1994) (explaining that "the section clearly extends to proceedings which were not initiated out of a malicious intent, and thus would not constitute malicious prosecution"). Nonetheless, several district courts within this circuit have read *Sullivan* to mean that section 821.6 applies only to malicious prosecution claims, in spite of the California Courts of Appeal decisions. *See, e.g.*, *Dinius v. Perdock*, 2012 WL 1925666, at \*8–\*9 (N.D. Cal. May 24, 2012) (agreeing "with the California Supreme Court's decision in *Sullivan* and find[ing] that Section 821.6 only applies to claims for malicious

prosecution" after noting that *Sullivan*'s holding "has been distinguished by numerous California Court of Appeal decisions"); *Williams v. City of Merced*, 2013 WL 498854, at *17 (E.D. Cal. Feb. 7, 2013) (same).

The court "must determine what meaning the state's highest court would give the statute in question." *Goldman v. Standard Ins. Co.*, 341 F.3d 1023, 1026 (9th Cir. 2003). We think the California Supreme Court would adhere to *Sullivan* even though California Courts of Appeal have strayed from it. *Sullivan* explained that section 821.6 expressly continued the existing immunity of public employees against malicious prosecution claims and noted that "no statute impose[d] liability on public entities for malicious prosecution." *Sullivan*, 527 P.2d at 871. Further, the cases the legislative history cited focused on malicious prosecution claims. *Id.*

Because the California Supreme Court has already spoken on this issue, we follow *Sullivan* and we reverse and hold that the district court erred in dismissing the state law claims against County Defendants because the claims against them are not malicious prosecution claims.

### D. Kaiser

We agree with the district court that the operative complaint stated no federal claims against Kaiser. Appellant does not challenge this ruling. The operative complaint also mentions a violation of HIPAA. However, "HIPAA itself provides no private right of action." *Webb v. Smart Document Sols., LLC*, 499 F.3d 1078, 1081 (9th Cir. 2007).

The district court dismissed all claims against Kaiser based on lack of supplemental jurisdiction, because it had dismissed all of the federal claims in the operative complaint. Kaiser does not dispute that supplemental jurisdiction is appropriate if any federal claim against County Defendants survives. Because we reverse the dismissal of certain federal claims against County Defendants, we reverse the district court's dismissal of claims against Kaiser.

## IV. Conclusion

The district court erred by granting Hanisee and Cooley absolute immunity for Hanisee's declaration, dismissing Garmon's federal claim against the County without leave to amend, dismissing the state claims against County Defendants under California Government Code section 821.6, and dismissing the state law claims against Kaiser. For all the foregoing reasons, we **REVERSE** in part and **REMAND**.