NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

MAR 5 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ROGER WAYNE PARKER,

        Plaintiff - Appellant,

  v.

COUNTY OF RIVERSIDE; PAUL E. ZELLERBACK, individually and in his official capacity as County of Riverside District Attorney; SEAN LAFFERTY, individually and in his official capacity; TRICIA FRANSDAL, individually and in her official capacity; JEFFREY VAN WAGENEN, individually,

        Defendants - Appellees.

No. 24-5602

D.C. No.
5:21-cv-01280-JGB-DTB

MEMORANDUM*

Appeal from the United States District Court
For the Central District of California
Jesus G. Bernal, District Judge, Presiding

Argued and Submitted December 4, 2025
Pasadena, California

Before: BEA, BADE, and LEE, Circuit Judges.

Roger Wayne Parker was held in pre-trial custody without a preliminary

---

    \*     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

hearing or an indictment issued by a grand jury for nearly four years. In October 2020, six years after his release, Parker learned of information allegedly indicating that the supervising prosecutors in the Riverside County District Attorney's Office intentionally suppressed exculpatory evidence and pursued his prosecution despite overwhelming evidence of his innocence. A year later, after seeking and obtaining a ruling in California state court declaring his factual innocence, Parker filed suit in the district court against the County of Riverside and four supervising prosecutors in the Riverside County District Attorney's Office—District Attorney Paul Zellerback, Assistant District Attorney Sean Lafferty, Assistant District Attorney Jeff Van Wagenen, and Supervising Deputy District Attorney Tricia Fransdal— alleging that his detention was caused by the defendants' actions in violation of the Fourteenth Amendment's guarantee of due process of law.

Parker's complaint, as amended, asserts four distinct claims: a malicious prosecution claim against the supervising prosecutors, a *Tatum-Lee* claim against the supervising prosecutors, and two *Monell* claims of an unconstitutional policy, practice, or custom against the County corresponding with the first two claims. *See generally Tatum v. Moody*, 768 F.3d 806 (9th Cir. 2014); *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). On November 21, 2023, the district court dismissed Parker's malicious prosecution claim and companion *Monell* claim, reasoning that the

former claim is time-barred and the latter is contingent on the former. Then on August 21, 2024, the district court granted judgment on the pleadings for defendants on Parker's *Tatum-Lee* claim and companion *Monell* claim, reasoning that the *Tatum-Lee* claim is barred by prosecutorial immunity and the *Monell* claim is barred because the unconstitutional policy could not be attributed to the County. Parker now appeals the district court's grant of judgment on the pleadings. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. The district court correctly concluded that absolute immunity shields Zellerback, Lafferty, Fransdal, and Van Wagenen from liability for Parker's prolonged pre-trial detention. Under § 1983, an official acting under color of state law who "subjects, or causes to be subjected," a person to wrongful detention with knowledge, actual or constructive, of the facts that make such detention wrongful can be held liable for such detention. 42 U.S.C. § 1983; *Lee*, 250 F.3d at 683; *Tatum*, 768 F.3d at 816–18. This general rule of liability is, however, subject to doctrines of official immunity. As is relevant here, "[a] prosecutor is absolutely immune 'when performing the traditional functions of an advocate,'" but not "when he is '[acting as] an administrator or investigative officer.'" *Torres v. Goddard*, 793 F.3d 1046, 1051 (9th Cir. 2015) (quoting *Kalina v. Fletcher*, 522 U.S. 118, 125, 131 (1997)).

Parker's first theory of causation is that Zellerback, Lafferty, Fransdal, and

Van Wagenen prevented dismissal of charges against him (and therefore prolonged his detention) by "administer[ing] a code of conduct demanding that line prosecutors pursue conviction at any cost." Failure to dismiss charges is unquestionably protected by absolute immunity. *See Morley v. Walker*, 175 F.3d 756, 760 (9th Cir. 1999). Parker contends, however, that setting and enforcing a code of conduct is an "administrative" activity not covered by absolute prosecutorial immunity. Parker correctly asserts that prosecutors do not have absolute immunity when making employment decisions or in setting an office conduct policy. *See Forrester v. White*, 484 U.S. 219, 229 (1988). But Parker's injury does not stem from an employment decision or an office conduct policy. Rather, the alleged "code of conduct" was simply the means of supervising his prosecution, and it was the decision to continue his prosecution that caused his injury, not the particular means of carrying out that decision. Whether supervising by direct oversight or by setting a general policy, "[a]n attorney supervising a trial prosecutor who is absolutely immune is also absolutely immune." *Garmon v. County of Los Angeles*, 828 F.3d 837, 845 (9th Cir. 2016) (citing *Van de Kamp v. Goldstein*, 555 U.S. 335, 345–46 (2009)).

Parker's alternative theory of causation is that Zellerback, Lafferty, Fransdal, and Van Wagenen could have effectuated his release by disclosing the exculpatory evidence to defense counsel, a disclosure they were constitutionally

required to make.  Precedent firmly establishes that performance of this constitutional duty is protected by absolute immunity.  *See Broam v. Bogan*, 320 F.3d 1023, 1030 (9th Cir. 2003); *Imbler v. Pachtman*, 424 U.S. 409, 431 n.34 (1976).  We are not at liberty to overrule a precedential decision by a prior panel of our court, and we may not overrule a decision of the Supreme Court.  *Balla v. Idaho*, 29 F.4th 1019, 1028 (9th Cir. 2022); *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997).  Accordingly, the district court properly entered judgment on the pleadings in favor of the supervising prosecutors.

2.  The district court also correctly concluded that the alleged policy adopted by the Riverside County District Attorney's Office could not be attributed to the County.  Under § 1983, a municipality may be held liable for a plaintiff's constitutional injury only if that injury is inflicted pursuant to municipal custom or policy.  *Monell*, 436 U.S. at 694; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) ("[R]ecovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered.").  Whether a particular policy is attributable to a municipality depends on an analysis of state law.  *McMillian v. Monroe County*, 520 U.S. 781, 786 (1997).

Under longstanding principles of California law, the district attorney "is at once the law officer of the county and the public prosecutor," and although "in the

former capacity he represents the county," in the latter capacity "he acts by the authority and in the name of the people of the state." *Pitts v. County of Kern*, 949 P.2d 920, 932–33 (Cal. 1998) (quoting *Modoc County v. Spencer*, 37 P. 483, 484 (Cal. 1894)); *accord Weiner v. San Diego County*, 210 F.3d 1025, 1030 (9th Cir. 2000). Nonetheless, not all policies established by the district attorney relating to criminal matters are attributable to the state alone. For instance, office policy concerning ancillary support systems "used to help prosecutors comply with their constitutional duties" can properly be attributed to the county because such a policy is "administrative" in nature and "does not involve prosecutorial strategy." *Goldstein v. City of Long Beach*, 715 F.3d 750, 762 (9th Cir. 2013).

Parker asserts that Zellerback, in his capacity as Riverside County District Attorney, established a policy of "pursuing convictions at any cost and punishing any [line] prosecutor who resisted," which resulted in the line prosecutors refusing to fulfill their constitutional obligations, "i.e., not prosecuting innocent people and turning over exculpatory evidence to the defense," which in turn resulted in his unduly prolonged detention. He characterizes this policy as "administrative" in nature because it related to "the general operation" of the Riverside County District Attorney's Office. We disagree. The alleged policy dictates the general "prosecutorial strategy" of the office, with the intent to direct the "prosecutorial act[s]" of the office's line prosecutors. *Goldstein*, 715 F.3d at 759, 762. The

allegedly injurious policy therefore cannot be attributed to the County for purposes of liability under § 1983—any action taken by the line prosecutors in accordance with the policy is necessarily action taken "in the name of the people of the state," and the County has no authority to "control" such actions. *Pitts*, 949 P.2d at 932–33 (quoting *Spencer*, 37 P. at 484); Cal. Gov't Code § 25303; *see McMillian*, 520 U.S. at 790–91. Accordingly, judgment on the pleadings in favor of the County was likewise proper.

3. The district court did not abuse its discretion in denying Parker leave to amend. Parker suggests that his complaint could be saved by an amendment adding an allegation "that Defendants are liable for failing to train line prosecutors on their ethical obligations to turn over exculpatory evidence and use of their professional discretion." But granting Parker leave to make this amendment would be an exercise in futility—it would not allow his complaint to survive judgment on the pleadings. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

Parker's proposed amendment would not establish causation. *Cf. Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997) ("[R]igorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."); *Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("A municipality's culpability for a deprivation of rights is at its most

tenuous where a claim turns on a failure to train.").  It is simply not "plausible" that improved training for the county's line prosecutors would have prevented Parker's wrongful detention.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Even if there was deficient training, those line prosecutors nonetheless repeatedly advised their superiors of their belief that Parker's prosecution was being conducted in violation of their constitutional and ethical obligations, yet the supervising prosecutors nonetheless pressed forward with their decisions to continue prosecuting the case and withhold exculpatory evidence.  Those decisions constitute a "superseding cause" of Parker's injury, *Stoot v. City of Everett*, 582 F.3d 910, 926 (9th Cir. 2009), and there is nothing "more than a sheer possibility" that better trained line prosecutors would have been able to change their supervisors' minds, *Iqbal*, 556 U.S. at 678–79.  Accordingly, the district court did not abuse its discretion in denying leave to amend.

**AFFIRMED**.